IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Hugo Martinez and Claudia Martinez, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiffs and Appellants, | ) | Case No. 20110182-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 12, 2012) |
| Best Buy Co., Inc., | ) | |
| | ) | 2012 UT App 186 |
| Defendant and Appellee. | ) | |

-----

Third District, Salt Lake Department, 090905510
The Honorable Sandra N. Peuler

Attorneys:      Brian W. Steffensen, Salt Lake City, for Appellants
                 Gregory J. Sanders and Patrick C. Burt, Salt Lake City, for Appellee

-----

Before Judges McHugh, Davis, and Thorne.

DAVIS, Judge:

¶1      Hugo and Claudia Martinez appeal the trial court's ruling in favor of Best Buy Co. on claims the Martinezes brought under section 13-11-4 of the Utah Consumer Sales Practices Act (the UCSPA), which proscribes "deceptive act[s] or practice[s] by a supplier in connection with a consumer transaction," *see* Utah Code Ann. § 13-11-4(1) (Supp. 2011).  We affirm.

¶2      On March 6, 2008, the Martinezes applied for a Best Buy credit card, which was issued by a credit card company called HSBC.[1]  In filling out the application, Claudia Martinez signed up for an "account shield" credit protection service (the account shield

---

1. The Martinezes are apparently engaged in separate litigation with HSBC.

service) associated with the card. The Martinezes were charged for the account shield service based on the amount of the balance they carried on the card. When the Martinezes realized that they were being charged, they called HSBC to cancel the service, but not before they were assessed a late fee for failing to pay the charge. Ultimately, the Martinezes' failure to pay for the account shield service negatively impacted their credit. They sued Best Buy, alleging that they unintentionally signed up for the account shield service as a result of Best Buy engaging in a number of deceptive business practices in violation of the UCSPA.

## I. Intent Under the UCSPA

¶3    Before addressing the substance of the Martinezes' arguments, we must first consider the standard for determining whether a supplier has violated the UCSPA by engaging in deceptive acts or practices. The Martinezes point us to the language of Utah Code section 13-11-2, which provides that the UCSPA "shall be construed liberally to promote," among other things, the policy of making "state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act [FTCA] relating to consumer protection." *Id.* § 13-11-2(4) (2009). In light of this provision, they urge us to interpret "deceptive" the same way the federal courts do under the FTCA, that is, by eliminating intent as an element of a deceptive act or practice and focusing instead on whether "the business entity made material representations likely to mislead ordinary consumers to their detriment." *Federal Trade Comm'n v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202-03 (10th Cir. 2005) (emphasis omitted); *see also ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1163 (Alaska 2011) (per curiam) ("'To show deception under the [FTCA], intent, scienter, actual reliance or damage, and even actual deception are unnecessary. All that is required is proof that a practice has a tendency or capacity (or, under the FTC's latest formulation, is likely) to deceive even a significant minority of consumers.'" (quoting National Consumer Law Center, *Unfair and Deceptive Acts and Practices* § 4.2.3.1, at 190 (7th ed. 2008))).

¶4    However, the plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice, *see* Utah Code Ann. § 13-11-4(2), making it inappropriate to construe the UCSPA as the Martinezes urge.[2]

---

2. This appears to be a conscious effort on the part of the legislature, as evidenced by its refining of the intent provision over the years. *See* Act of Feb. 27, 1985, ch. 250, § 1, 1985

(continued...)

Furthermore, Utah courts and courts employing Utah law have consistently recognized intent as an element of a UCSPA claim. *See Reed v. AFNI, Inc.*, No. 2:09-CV-459 TS, 2011 WL 112430, at *3 (D. Utah Jan. 13, 2011) (mem.) (rejecting a UCSPA claim in part due to the plaintiff's failure to present evidence of intent); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (dismissing a UCSPA claim for failure to state a claim because the court determined that the plaintiff had failed to sufficiently plead "a required element of the statute," i.e., that the defendants "committed a deceptive act or practice 'knowingly or intentionally'" (quoting Utah Code Ann. § 13-11-4(2) (2009) (current version at *id.* (Supp. 2011)))); *Rawson v. Conover*, 2001 UT 24, ¶ 36, 20 P.3d 876 (quoting the language of the UCSPA and observing that it "requires that the supplier knowingly or intentionally deceive the consumer"); *State ex rel. Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 313 (Utah 1988) (observing that the original version of the UCSPA, which "contained no intent requirement," was amended in 1985 "to require 'intent to deceive' on the part of a supplier before a deceptive trade practice can be found" (quoting Utah Code Ann. § 13-11-4(2) (Supp. 1988) (current version at *id.* (Supp. 2011)))). Thus, in order to establish a violation of the UCSPA, the Martinezes were required to establish that Best Buy knowingly or intentionally engaged in deceptive acts or practices. With this standard in mind, we now examine the trial court's ruling that the Martinezes failed to establish that Best Buy violated the UCSPA, reviewing its legal determinations for correctness and its factual determinations for clear error, *see MacKay v. Hardy*, 973 P.2d 941, 944 (Utah 1998).

## II. Alleged Violations of the UCSPA

¶5    The Martinezes allege that the following actions by Best Buy were deceptive in violation of the UCSPA: (1) the employee assisting the Martinezes with their credit card application instructed them to sign in two places in order to get the credit card even though the second place they were told to sign referred to the account shield service rather than the credit card; (2) the employee failed to explain the account shield service, to inform the Martinezes that it was a separate product from the credit card, or to inform them that by signing the second line they were agreeing to enrollment in the account shield service; (3) the Martinezes were neither offered nor provided a Spanish translation of the credit card application, despite the fact that the application required

---

2.  (...continued)
Utah Laws 926 (adding "with intent to deceive" to the deceptive acts and practices provision); Act of Feb. 27, 1995, ch. 237, § 1, 1995 Utah Laws 799 (substituting "knowingly or intentionally" for "with intent to deceive").

them to attest that they had been; (4) the application did not disclose the cost of the account shield service; and (5) Best Buy informed HSBC that both of the Martinezes had agreed to purchase the account shield service despite the fact that only Claudia Martinez signed that portion of the application. We address each of these allegations in turn.

A. Employee's Misrepresentation Regarding the Signature Lines

¶6      The Martinezes first argue that the employee's representation that they were required to sign in both places was deceptive in violation of the UCSPA. The trial court found that the employee did falsely represent to the Martinezes that they were required to sign in both places in order to get the credit card when, in fact, they needed only to sign the first portion of the application.[3] The trial court made no finding as to whether this was a knowing or intentional misrepresentation. Nevertheless, the trial court determined that the Martinezes could not rely on the statement to allege a deceptive act because it was clearly contradicted by the language of the application.

¶7      The Martinezes challenge the trial court's use of contract principles in its analysis, arguing that it was improper for the trial court to determine that this allegedly deceptive act did not violate the UCSPA based solely on its determination that the correct information was provided in the application. As the Martinezes point out, one of the purposes of the UCSPA is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices," Utah Code Ann. § 13-11-2(2). Thus, the fact that the Martinezes could have better protected themselves by reading the terms of the application would not necessarily bar them from recovering under the UCSPA if Best Buy had knowingly or intentionally deceived them as to the contents of the application. *Cf. Semenov v. Hill*, 1999 UT 58, ¶ 12, 982 P.2d 578 (emphasizing that a party will be bound by the provisions of a contract he signed, despite failing to read it, "'*in the absence of fraud or mistake*'" (quoting 17 C.J.S. *Contracts* § 41(f) (1963) (current

---

3. We question whether this was actually a false representation in light of the fact that the second place the Martinezes were told to sign, which dealt with the account shield service, contained two separate signature lines—one for accepting the service and one for declining the service. It may well be that a signature was in fact needed in the second area as the employee represented, but that the Martinezes could have elected to sign the line rejecting the service rather than the line accepting the service. Nevertheless, we defer to the trial court's finding on this factual issue, given that no party has challenged it on appeal.

version at 17 C.J.S. *Contracts* § 50 (2011)))); *Sosa v. Paulos*, 924 P.2d 357, 363 (Utah 1996) (holding that a party's "duty to read and understand the terms of a contract before signing it . . . is obviated when the party's failure to read the agreement results from the procedurally unconscionable behavior of the party in the stronger bargaining position" (citation omitted)).

¶8      Nevertheless, even accepting the Martinezes' argument that the employee's misrepresentation was sufficiently deceptive to violate the UCSPA, the Martinezes presented no argument to the trial court and no argument on appeal alleging that the misrepresentation was either knowing or intentional.  In fact, they attempt to avoid this question by asserting that intent is not an element of unlawful deception under the UCSPA, an argument that we have rejected.  Thus, in the absence of any evidence of intent, the employee's misrepresentation cannot be determined to have violated the UCSPA.[4]

B.  Explanation of the Account Shield Service

¶9      The Martinezes also contend that Best Buy was deceptive because it failed to notify them that the second signature line related to the account shield service and that acceptance of that product would result in additional fees.  The UCSPA is intended not only to protect consumers but also to "protect suppliers who in good faith comply with [its] provisions."  Utah Code Ann. § 13-11-2(6) (2009).  Best Buy's failure to orally explain the account shield service is not comparable to the specific categories of deceptive acts and practices listed in the UCSPA.  *See id.* § 13-11-4(2) (Supp. 2011) (listing a variety of affirmative misrepresentations as violations of the UCSPA).  *See generally Whitney v. Division of Juvenile Justice Servs.*, 2012 UT 12, ¶ 14, 274 P.3d 906 ("Under the doctrine of ejusdum generis, we read a statute's use of a term or phrase as restricted to include things of the same kind, class, character, or nature as those specifically enumerated." (internal quotation marks omitted)).  Moreover, the Martinezes point us to no evidence that could support a finding that the absence of an explanation separate from that in the application was intended to deceive them.  Thus,

---

4.           [I]t is well settled that an appellate court may affirm the
             judgment appealed from if it is sustainable on any legal
             ground or theory apparent on the record, even though such
             ground or theory differs from that stated by the trial court to
             be the basis of its ruling or action . . . .
*Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 (internal quotation marks omitted).

we agree with the trial court that the Martinezes failed to demonstrate that these actions violated the UCSPA.

C. Spanish Translation

¶10    For the same reasons, we are not convinced that the employee's failure to provide the Martinezes with a Spanish translation of the application was deceptive. Furthermore, the trial court specifically determined that there was no evidence to support a finding that Best Buy knowingly or intentionally deprived them of the translation. "The determination of whether a person had the [requisite] intent is one of fact for the [trial] court." *Wade v. Jobe*, 818 P.2d 1006, 1016 (Utah 1991), *superseded by statute on other grounds as stated in Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996). The Martinezes have neither marshaled the evidence in support of this finding nor made any argument regarding Best Buy's intent apart from their argument that they did not need to show intent, which was made without even a passing reference to binding Utah authority to the contrary. Therefore, we uphold the trial court's determination that the employee's failure to provide the Martinezes with a Spanish translation of the application did not violate the UCSPA.

D. Charge for the Account Shield Service

¶11    Next, the Martinezes contest the trial court's finding that the application adequately informed the Martinezes that there would be a charge associated with the account shield service and that the application was therefore not deceptive. The language in the application addressing the account shield service did not specifically identify any cost associated with the service. However, it did require the applicant to attest, "I authorize the monthly charge on my account when I have a balance." A Best Buy representative testified at trial that the application indicated that the cost of the account shield service was "based on the balance of the account." The trial court determined that it was incapable of reading the blurry copy of the application provided to it and therefore relied on the representative's testimony in finding that there was "an indication and language in th[e account shield] provision that would reflect a charge" for the service and, specifically, that the application disclosed that the cost would be "'a portion of the balance based upon the balance of the account.'"

¶12    Although we agree that the copy of the application provided to the trial court was extremely difficult to read, it was not completely indecipherable and ought to have been considered by the trial court. Thus, it was error for the trial court to find that the application identified the cost as "'a portion of the balance based upon the balance of

the account,'" since no such language is actually contained in the application. However, the trial court did not clearly err in finding that the language of the account shield provision indicated that there was a charge associated with the service, given that the application clearly refers to such a charge. In any event, the Martinezes do not claim that they were induced to sign up for the account service because they thought there was no cost or that the cost was lower than it was; rather, they maintain that they were completely unaware they were signing up for the service. Given that they did not read the application and did not actually intend to sign up for the account shield service, regardless of the cost, we cannot see how a clearer statement of the cost of the service in the application would have prevented them from inadvertently signing up for it.[5]

E. Communication with HSBC

¶13    Finally, the Martinezes allege that Best Buy acted deceptively by informing HSBC that both of the Martinezes had signed up for the account shield service when only Claudia Martinez had signed that portion of the application. However, this allegation is not supported by the evidence. At trial, the only evidence relating to this issue was the testimony of the Best Buy representative. The representative testified that when a customer fills out an application for a Best Buy credit card, an employee generally enters the information from the application into Best Buy's computer, from which it is transmitted to HSBC, and that the employee then mails the original application to HSBC. The representative testified that the information entered into the computer includes whether the account shield service was requested. However, this general testimony provides no evidence of what precise information was entered into the computer with respect to the Martinezes' application, and there is nothing to indicate that the employee entering the information affirmatively represented that Hugo Martinez had individually signed up for the account shield service. Furthermore, the evidence suggests that HSBC received a copy of the actual application, which clearly contains only Claudia Martinez's signature on the account shield portion. And, as with the Martinezes' other allegations, they have presented no evidence that any misrepresentation that may have been made in entering the information into the computer was either knowing or intentional. Thus, we agree with the trial court that

---

5. Though an explanation of the service and its cost by the employee might have prevented the Martinezes from accidentally signing up for it, we have already established that the lack of explanation does not rise to the level of a UCSPA violation. *See supra* ¶ 9.

the Martinezes failed to demonstrate that Best Buy's communication with HSBC regarding the Martinezes' application was deceptive under the UCSPA.[6]

¶14    In sum, we reject the Martinezes' assertion that intent is not an element of a deceptive act or practice under the UCSPA.  Furthermore, we reject the Martinezes' arguments that Best Buy violated the UCSPA by engaging in the various acts discussed above.  Thus, we affirm the trial court's ruling in favor of Best Buy.

_____
James Z. Davis, Judge

-----

¶15    WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge


_____
William A. Thorne Jr., Judge

_____

6.  As the trial court observed, the question of whether Hugo Martinez could be held responsible for the charge, despite the fact that only Claudia Martinez signed up for the account shield service, more properly relates to the Martinezes' litigation with HSBC, and is not before us in this case.