FILED
United States Court of Appeals
Tenth Circuit

February 25, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ADRIANA BERNEIKE,

      Plaintiff-Appellant,

v.

CITIMORTGAGE, INC.,

      Defendant-Appellee.

No. 11-4210

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:11-CV-00614-BCW)

---

Brian W. Steffensen of Steffensen Law Office, Salt Lake City, Utah, for
Defendant-Appellant.

Anthony C. Kaye, (Angela W. Adams and Steven D. Burt with him on the brief),
of Ballard Spahr LLP, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **GORSUCH** and **MATHESON**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

      Adriana Berneike (Berneike) appeals the district court's dismissal pursuant

to Rule 12(b)(6) of her Real Estate Settlement Procedures Act (RESPA), Utah

Consumer Sales Protection Act (UCSPA), and breach of contract claims asserted

against CitiMortgage, Inc. (Citi).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

On January 13, 2010, Berneike faxed twenty-eight different letters to Citi, her mortgage loan servicer, asserting that Citi was incorrectly billing her for overcharges and improper fees.[1]  See, e.g., Aplt. App. at 21.  Twenty-two of the January 13 letters were addressed to a Citi address in Illinois, and six letters were addressed to a Citi address in Nevada.  Id. at 15-42.  On January 29, 2010, Berneike faxed a second round of at least fifty-eight different letters.  Id. at 6.  Like the January 13 letters, these letters asserted that Citi was improperly billing Berneike for overcharges, and sought information regarding specific fees that were set forth on her monthly bills, such as "late payment," "other charge," and "[r]eturned payment fee."  Id. at 58, 60, 91.  The January 29 letters were addressed to a Citi address in Nevada.  Id. at 44-102.  All the letters included "Qualified Written Request (RESPA)" in the subject line.  These letters were later attached as exhibits to Berneike's complaint in the present action.  Id. at 6, 21.

On February 3, 2010, Berneike received two response letters from Citi regarding her billing concerns, but she attached only one of these letters to her

---

[1] Facts are primarily taken from Berneike's complaint.  See McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002) (accepting all well-pleaded factual allegations in the complaint as true when reviewing a district court's grant of a motion to dismiss).

complaint. In the letter she attached to her complaint, Citi acknowledged Berneike's inquiry and responded that it believed her account was correctly serviced. Citi provided the specific amounts of Berneike's payments for 2008, explaining that "[d]ue to an increase in your escrow disbursements since your previous analysis, a shortage developed." Id. at 104. Generally, Citi stated that Berneike's account was correct and that taxes and an escrow shortage caused billing fluctuation. Finally, Citi provided a telephone number where Berneike could reach an employee for future assistance.

Steadfast in her belief that Citi was overcharging her, Berneike sent another letter in June 2010 seeking further explanation and correction. This letter was not attached to her complaint. On July 28, 2010, Berneike faxed a third round of forty-seven different letters to Citi again requesting information about overcharges and improper fees. Citi did not respond to Berneike's June or July letters, but it did send a third letter "demanding a late fee of $73.31 for a return[ed] check fee for Plaintiff's previous payment," on September 23, 2010. Id. at 9. Altogether, Berneike faxed more than one-hundred letters to Citi. Berneike claims that despite paying in full every bill she received, she continues to be overcharged by Citi and is facing foreclosure and bankruptcy.

Berneike filed suit in Utah state court alleging Citi's conduct violated UCSPA, breached their contract and covenant of good faith and fair dealing, and violated RESPA. Among other damages, Berneike sought "$1,000 per violation

3

of RESPA." Id. at 12. Thereafter, Citi timely removed the case to federal court, and the court then granted Citi's motion to dismiss Berneike's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

II

This court reviews de novo a district court's Rule 12(b)(6) dismissal for failure to state a claim. Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012). Accordingly, all well-pleaded allegations of the complaint are accepted as true and viewed in a light most favorable to the nonmoving party. While factual assertions are taken as true, legal conclusions are not. To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Berneike also appeals the district court's denial of her request for leave to amend based on the district court's determination that amendment would be futile. "[W]e generally review for abuse of discretion a district court's denial of leave to

---

[2] The motion to dismiss was referred to a magistrate judge pursuant to Rule 73 and 28 U.S.C. § 636(c). Parties Consent, Berneike v. CitiMortgage, No. 2:11-cv-00614-BCW (D. Utah July 1, 2011), ECF 10. For simplicity's sake, the order appealed will be referred to as the district court's order.

4

amend a complaint," but we review de novo "the legal basis for the finding of futility." Cohen v. Longshore, 621 F.3d 1311, 1314 (10th Cir. 2010).

III

*RESPA Claim*

The Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617, is a consumer protection statute enacted to regulate real estate settlement processes. § 2601. Under RESPA, a servicer of a "federally related mortgage loan" may be liable for damages to a borrower if it fails to adequately respond to a qualified written request (QWR). § 2605(e)-(f). Upon receipt of a QWR, the loan servicer must provide a written response within twenty days of the borrower's inquiry acknowledging the QWR. § 2605(e)(1)(A). Within sixty days of receipt of a QWR, the loan servicer generally must investigate and make appropriate corrections to the borrower's account, provide a written notification of any correction or an explanation why no correction was necessary, and provide a contact number for a representative. § 2605(e)(2). If the servicer fails to appropriately respond, the borrower may recover actual damages resulting from the servicer's failure and "any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." § 2605(f). The servicer's duty to respond is triggered by receipt of a QWR, which is defined as "written correspondence, other than notice on a payment coupon" that states the name and account number of the borrower as

5

well as a statement of the reasons that the borrower believes the account is in error.  § 2605(e)(1)(B).

Pursuant to RESPA's implementing regulation ("Regulation X"),[3] "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests" by "notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid." 24 C.F.R. § 3500.21(e)(1).  This authority arises under the heading "Duty of loan servicer to respond to borrower inquires." § 3500.21(e)(1).

The parties do not dispute that Berneike failed to send her letters to Citi's designated QWR address, which Citi contends mandates dismissal of Berneike's RESPA claims.  Berneike counters with two arguments:  first, the district court erroneously considered documents outside of the pleadings to find that Citi had

---

[3]  In implementing RESPA pursuant to § 2617, the Secretary of the Department of Housing and Urban Development (HUD) promulgated 24 C.F.R. § 3500.21.  On July 21, 2011, the Bureau of Consumer Financial Protection (Bureau) assumed HUD's consumer-protection function under RESPA pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376.  Thereafter, the Bureau adopted HUD's previous regulation, including Regulation X.  See 12 C.F.R. 1024.21.  The Dodd-Frank Act, among other changes, decreased the response time in § 2605(e) from twenty days to five and from sixty days to thirty days, but has not yet taken effect.  See Pub. L. 111-203 §§ 1400(c), 1463, 124 Stat. 1376, 2183-84  (stating that "a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect" or, if no regulations have been issued, "on the date that is 18 months after the designated transfer date," July 21, 2011, which would be January 21, 2013).  On January 17, 2013, the Bureau issued a final rule implementing the Dodd-Frank amendments to RESPA and amending Regulation X, with an effective date of January 10, 2014.

provided notice of its designated QWR address; and, second, that Citi waived its right to receive QWRs at the designated address by responding to her first round of faxed letters.

### 1. Documents Outside of the Pleadings

Initially, Berneike claims the district court erred when it considered Citi's Welcome Letter, which included notice of a designated address for receipt of QWRs. Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion. Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and "'matters of which a court may take judicial notice.'" Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). This court has explained that

> if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

Here, Berneike claims that the district court improperly considered the Welcome Letter and a monthly mortgage loan statement sent by Citi to Berneike. Berneike argues the district court's consideration of the Welcome Letter was

7

improper because she did not reference the letter in or attach the letter to her complaint. Additionally, Berneike argues the district court improperly concluded that the Welcome Letter was central to her claim.

In its Welcome Letter, Citi stated that borrowers "must" send all QWRs to a designated address in Maryland. Aplt. App. at 117. We conclude that the Welcome Letter is central to Berneike's RESPA claim because it notified Berneike of the correct address to use when sending a QWR. Whether Berneike sent the letters to the designated address affects whether she sent a QWR, which would trigger Citi's RESPA obligations. Berneike did not, however, incorporate the Welcome Letter by reference or mention it in her complaint, and the district court provided no citation to the complaint where it found such a reference. See Aplt. App. at 5-12, 223. Accordingly, the district court improperly considered the Welcome Letter. Cf. GFF Corp., 130 F.3d at 1385 (concluding that district court properly considered letter that was "frequently referred to and quoted from" in the amended complaint).

Nevertheless, it was not reversible error for the district court to consider the RESPA notice and address that were contained in the Welcome Letter because the same notice containing the correct QWR address was also set forth in the monthly billing statements, which were properly before the court.[4] Berneike does

---

[4] Berneike does not dispute that Citi gave sufficient notice of the required address, and we assume for present purposes that the notice was sufficient.

8

not dispute that this notice was contained in each of her monthly billing statements, and she explicitly referenced the monthly statements in her complaint. It was proper for the district court to consider the referenced monthly statements that included the RESPA notice and required QWR address.

## 2. Waiver

Berneike next argues that Citi waived its right to receive QWRs at the designated address by corresponding with her. Berneike cites no supporting authority for this argument, and does not dispute the validity or application of RESPA's implementing regulation, which authorizes a mortgage servicer to designate an exclusive address for receipt of QWRs. Aplt. Br. at 22-23; see Fed. R. App. P. 28(a)(9) (requiring appellant's brief identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Citi counters that no waiver occurred because "waiver must be distinctly made." Aplee. Br. at 29 (citing Meadow Valley Contractors., Inc. v. Utah Dep't of Transp., 266 P.3d 671 (Utah 2011)).

While a party may voluntarily relinquish or surrender a known right, the relevant inquiry is not whether Citi waived its right to receive QWRs at its designated address simply by responding to Berneike's correspondence. See Yates v. Am. Republics Corp., 163 F.2d 178, 180 (10th Cir. 1947). Rather, the inquiry is whether the correspondence satisfies the RESPA requirements such that Citi's duties under § 2605 were triggered.

9

Citi relies on two unpublished district court cases concluding that RESPA duties are not triggered when the correspondence is not sent to the designated address. Steele v. Green Tree Serv., LLC, No. 3:09-CV-0603-D, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010), aff'd, 453 F. App'x 473 (5th Cir. 2011), cert. denied, 133 S. Ct. 111 (2012); Bally v. Homeside Lending, Inc., No. 02 C 5799, 2005 WL 2250856 (N.D. Ill. Sept. 8, 2005). In Bally, the plaintiff, like Berneike, faxed her letters to the servicer, which the district court concluded failed to trigger the defendant's RESPA duties, even if the servicer actually received the fax. 2010 WL 2250856, at *2-3. Similarly, the district court in Steele also concluded that letters sent to a nondesignated address failed to trigger RESPA duties and amounted to "informal avenues to obtain other information." 2010 WL 3565415, at *3. While these courts have held that failing to address a QWR to the designated address bars a § 2605 claim under RESPA, regardless of actual receipt, at least one district court has excused failure to use the designated address when the servicer actually received the QWR.[5] Because we afford Regulation X controlling weight, we find persuasive those cases that conclude that a servicer's receipt of a QWR at the designated address is required to trigger

[5] Compare Vought v. Bank of Am., NA, No. 10-2052, 2010 WL 4683599, at *5 (C.D. Ill. Sept. 24, 2010) (concluding RESPA's use of "receive" unambiguous and the plaintiff's failure to use the designated address not fatal to her claim), with Steele v. Green Tree Serv., LLC, No. 3:09-CV-0603-D, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010) (concluding that "[t]he meaning of 'receive' in RESPA is ambiguous, and the regulation provides an interpretation that is neither arbitrary nor capricious").

10

RESPA duties and liability under § 2605.

When reviewing an agency's construction of a statute it administers, we apply the well-known, two-step analysis articulated in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). First, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If the statute is silent or ambiguous on the issue, we proceed to step two and ask "whether the agency's answer is based on a permissible construction of the statute." Id. at 843. So long as the agency's construction is not "arbitrary, capricious, or manifestly contrary to the statute," that construction will stand. Id. at 843-44.

When determining whether Congress has expressly spoken to the issue, under the first prong of Chevron, we "look[] to, among other things, the statutory text, history, and purpose." United Keetooway Band of Cherokee Indians of Okla. v. U.S. Dep't of Hous. & Urban Dev., 567 F.3d 1235, 1239-40 (10th Cir. 2009). Beginning, as we must, with the plain language of the statute, § 2605(e) states that liability is triggered by receipt of the QWR. RESPA does not define "receipt," or discuss the use of a designated address for QWRs. See §§ 2602, 2605(e), (i). Accordingly, a servicer's authority to designate an address for receipt of QWRs is not directly addressed by RESPA. Nor does the structure of § 2605 or its legislative history provide any clarity on this issue.

11

Congress enacted RESPA to effectuate "significant reforms in the real estate settlement process . . . to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices." § 2601(a). Originally, "settlement process" in RESPA included negotiation and execution of mortgage contracts, but in 1990, RESPA was amended to include loan servicing. Section 2605 was enacted as an amendment to RESPA in 1990, by the Cranston-Gonzalez National Affordable Housing Act and amended one year later. Pub. L. No. 101-625, § 941, 104 Stat. 4079; S. Rep. No. 101-17125 (1990) (Conf. Rep.), 136 Con. Rec. S17125-01 (discussing the possible addition of "or" at the end of § 6(e)(2)(A)). This legislative history does little to inform the issue. Because Congress has not "directly addressed the precise question at issue," we proceed to ask whether the agency's interpretation is a permissible construction of the statute. Chevron, 467 U.S. at 842-43.

Congress empowered HUD (and subsequently the Bureau) to "prescribe such rules and regulations, to make such interpretations . . . as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617. And HUD exercised that authority by promulgating 24 C.F.R. § 3500.21, pursuant to notice and comment rulemaking, which granted servicers the authority to designate an exclusive address for receipt of QWRs under (e)(1) of the implementing

12

regulations of RESPA.  See Real Estate Settlement Procedures Act, Section 6, 59 Fed. Reg. 65442-01, 65445-46 (Dec. 19, 1994) (responding to comments regarding the designated address by stating that "[t]his rule does not require that a servicer establish an office to handle borrowers' complaints.  It does, however, allow the servicer to do so.  In the event the servicer establishes such an office and complies with all the necessary notice provisions of this rule, then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'").

Regulation X's grant of authority to servicers to designate an exclusive address is a permissible construction of RESPA.  Section 2605(e)(2) delineates what correspondence qualifies as a QWR, which recognizes that servicers will not have a statutory duty to respond to all inquiries or complaints from borrowers. Failure to send the QWR to the designated address "for receipt and handling of [QWRs]" does not trigger the servicer's duties under RESPA.  See Regions Hosp. v. Shalala, 522 U.S. 448, 457 (1998) (concluding that so long as "the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding" (quotation omitted)).  RESPA was intended to reform the real estate settlement process to give consumers "greater and more timely information," and allowing a servicer to designate an exclusive address where

13

such requests can be handled does not undermine this goal. See Watt v. GMAC Mortg. Corp., 457 F.3d 781, 783 (11th Cir. 2006). Therefore, we accord Regulation X controlling weight.

Berneike admits that she did not mail her correspondence to the designated address, arguing instead that Citi waived its statutory right to receive all future QWRs at its specified address because it responded without asserting Berneike's correspondence was sent to the wrong address. This argument is not persuasive. RESPA and its implementing regulation envisioned that only certain communications would trigger liability for damages under § 2605, and delineated certain requirements for communications before imposing that liability. See, e.g., Medrano v. Flagstar Bank, FSB, ___ F.3d ___, No. 11-55412, 2012 WL 6183549, at *4 (9th Cir. Dec. 11, 2012). Communication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer. Receipt at the designated address is necessary to trigger RESPA duties, and Citi did not receive Berneike's letters at the designated address. Accordingly, the district court did not err in dismissing Berneike's RESPA claim.

*Utah Consumer Sales Practices Act*

Berneike next contends that the district court erred by dismissing her state

14

consumer protection claim.[6] Specifically, she disagrees with the district court's

conclusion that the Utah Consumer Sales Practices Act (UCSPA) did not apply to

mortgage loan transactions and that she was barred from asserting a UCSPA claim

because the conduct she complained of is governed by other, more specific law.

The Utah Supreme Court has not ruled on whether the UCSPA applies to loan

servicing; therefore, "our task here is to interpret and apply the law of [Utah] as

we believe the [Utah] Supreme Court would." High Plains Natural Gas Co. v.

Warren Petroleum Co., 875 F.2d 284, 288 (10th Cir. 1989); see United States v.

DeGasso, 369 F.3d 1139, 1145 (10th Cir. 2004) ("It is axiomatic that state courts

are the final arbiters of state law."). Because we agree with the district court that

the Utah Supreme Court case Carlie v. Morgan, 922 P.2d 1 (Utah 1996), controls

here, we need not decide whether the UCSPA applies to mortgage loan servicing.

The UCSPA "protect[s] consumers from suppliers who commit deceptive

and unconscionable sales practices." Utah Code Ann. § 13-11-2(2). This act is

"construed liberally," "to make state regulation of consumer sales practices not

---

[6] Citing no authority, Berneike asserts the district court lost subject matter jurisdiction over the state law claims once it dismissed her RESPA claim. Aplt. Br. at 23-24. We disagree. Pursuant to 28 U.S.C. § 1367, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). See also Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009) ("[T]he district court's exercise of its discretion under § 1367(c) is not a jurisdictional matter. Thus, the court's determination may be reviewed for abuse of discretion, but may not be raised at any time as a jurisdictional defect." (alteration and quotation omitted)).

15

inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection." § 13-11-2(4) (footnote omitted). Violative conduct can occur "before, during, or after the transaction," but the supplier must have knowingly or intentionally committed the deceptive act or practice or the supplier's conduct must be unconscionable. §§ 13-11-4 to -5.

While the Utah Supreme Court has not explicitly decided whether a borrower can assert a USCPA claim when the Utah statutes governing mortgage loan servicing and trust deeds govern the complained-of conduct, it has ruled that a USCPA claim is barred when the complained-of conduct was governed by other, more specific law. In Carlie, the Utah Supreme Court determined that a more specific statute, the Utah Fit Premises Act, provided a remedy for the complained-of conduct and held that, pursuant to its "long-standing rule of statutory construction that '[s]pecific statutes control over more general ones,' . . . [the] plaintiffs may not resort to the UCSPA under the facts alleged." 922 P.2d at 6 (first alteration in original) (citation omitted) (quoting State v. Lowder, 889 P.2d 412, 414 (Utah 1994)).

Similar to the facts in Carlie, "the UCSPA does not explicitly include or exclude" mortgage loan transactions and the alleged wrongful conduct is governed by more specific statutes than the UCSPA.[7]  Id.  Cf. Woodhaven

_____

[7] See McGinnis v. GMAC Mortg. Corp., No. 2:10-cv-00301-TC, 2010 WL 3418204, at *6 (D. Utah Aug. 27, 2010) (concluding that the defendants' conduct
(continued...)

16

Apartments v. Washington, 942 P.2d 918, 923-24 (Utah 1997) (finding Carlie's holding distinguishable because no "other specific laws . . . appl[ied] to landlord/tenant transactions"), abrogated on other grounds by Commercial Real Estate Inv., L.C. v. Comcast of Utah II, Inc., 285 P.3d 1193, 1202 (Utah 2012). Mortgage loan servicing is highly regulated under Utah statutory law. See, e.g., Mortgage Lending and Servicing Act, Utah Code Ann. §§ 70D-2-304, -501 (specifying rules for mortgage servicing, such as providing the mortgagor a statement detailing the account and imposing civil and criminal liability for violation); id. § 70D-1-102 (defining "Mortgage" as a "mortgage or deed of trust affecting real property located in this state."). Likewise, deeds in trust are also highly regulated under Utah statutory law. See, e.g., Utah Code Ann. § 57-1-1, -19 to -36. We conclude that Berneike is barred from asserting a USCPA claim pursuant to the principles articulated by the Utah Supreme Court in Carlie. Wankier v. Crown Equip. Corp., 353 F.3d 862, 867 (10th Cir. 2003) ("The federal court must defer to the most recent decisions of the state's highest court."). Because Berneike is barred from asserting a UCSPA claim based on Utah Supreme Court precedent rather than federal preemption, Berneike's federal preemption argument is not persuasive. Accordingly, dismissal of Berneike's

[7](...continued) was "governed by the more specific Utah High Cost Home Loan Act, and Mortgage Lending and Servicing Act," which precluded application of UCSPA); Burnett v. Mortg. Elec. Registration Sys., No. 1:09-cv-00069DAK, 2009 WL 3582294, at *4-5 (D. Utah Oct. 27, 2009).

17

UCSPA claim, as pled, was warranted.[8]

*Remaining Claims*

Berneike asserts the district court erred in dismissing her contract claim. Under Utah law, to establish a breach of contract, a plaintiff must show: (1) the existence of a contract, (2) her performance of that contract, (3) breach of the contract by the other party, and (4) damages. Bair v. Axiom Design, L.L.C., 20 P.3d 388, 392 (Utah 2001). Berneike contends that she sufficiently pled her fulfillment of the contract and Citi's breach. The district court concluded that her allegations did not satisfy the pleading requirements in light of her failure to include how Citi breached the contract, which contractual provisions were violated, and how Berneike upheld her end of the agreement.

We agree that, as pled, Berneike's claims are based on legal conclusions without sufficiently alleged supporting facts. See Aplt. App. at 10-11. She provides scant factual basis for the performance or breach of any contract

---

[8] Berneike argues that two Utah Court of Appeals cases have held that mortgage transactions fall within the UCSPA's scope, despite Carlie's holding. Aplt. Br. at 25. But the trial court in Estrada v. Mendoza, 275 P.3d 1024 (Utah Ct. App. 2012), concluded that the plaintiffs waived their claims by failing to appeal the issuance of the writ of garnishment via the state procedure, and the Utah Court of Appeals discussed whether the plaintiffs could assert a UCSPA claim procedurally, not the merits of their UCSPA claim. Id. at 1028 & n.6. Likewise, the court in Martinez v. Best Buy Co., 283 P.3d 521 (Utah Ct. App. 2012), found that the plaintiffs had not sufficiently shown that the defendants' acted with knowledge or intent to deceive. 283 P.3d at 524-25. While the plaintiffs in Martinez were credit-card applicants and the defendants were Best Buy employees initiating a credit-card account, Martinez does not hold that the UCSPA applies to mortgage loan servicing. See id. at 524, 526.

18

between herself and Citi.  Khalik, 671 F.3d at 1193 ("While 'specific facts are not necessary,' some facts are." (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007) (alteration and citation omitted))).  Accordingly, the district court did not err by dismissing Berneike's breach of contract claim.

*Leave to Amend*

Finally, Berneike asserts the district court erred by dismissing her claims with prejudice and denying her leave to amend.  Rule 15(a) states that leave to amend should be "freely give[n] . . . when justice so requires," but a "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint."  Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006).  For reasons previously discussed, Berneike's RESPA and UCSPA claims would still be subject to dismissal even if amended, rendering leave to amend futile.  Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).  The district court did not abuse its discretion by denying Berneike leave to amend her contract claim since she failed to give "adequate notice to the district court and to the opposing party of the basis of the proposed amendment."  Calderon v. Kan. Dep't of Social & Rehab. Servs., 181 F.3d 1180, 1186-87 (10th Cir. 1999); Aplt. App. at 183.  Accordingly, the district court did not err by dismissing Berneike's claims without leave to amend.

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.