**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTINE WARREN,

    Plaintiff - Appellant,

v.

GREEN TREE SERVICING, LLC,

    Defendant - Appellee.

No. 16-1021
(D.C. No. 1:14-CV-02241-PAB-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

Christine Warren appeals from two district court orders. In one, the court set aside a clerk's entry of default and denied as moot Ms. Warren's motion for a default judgment against Green Tree Servicing, LLC. In the other, the court granted summary judgment to Green Tree on Ms. Warren's claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. **RESPA**

Under RESPA, the servicer of a "federally related mortgage loan" may be liable for damages if it does not adequately respond to a borrower's qualified written request (QWR). 12 U.S.C. § 2605(e)-(f). A QWR is "a written correspondence" that includes either "a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). When a servicer receives a QWR, it has five days to send written acknowledgment of receipt. *Id.* § 2605(e)(1)(A); 12 C.F.R. §§ 1024.35(d), 1024.36(c). It also has 30 days to investigate and either make appropriate corrections, provide the requested information, or explain in writing why the servicer believes the account is correct or the information is not available to it. *Id.* § 2605(e)(2); 12 C.F.R. §§ 1024.35(e)(1), (3)(i)(C), 1024.36(d).

Under RESPA's implementing regulation, Regulation X, a servicer may establish a specific address for receiving QWRs ("QWR address") by sending written notice to the borrower stating that the borrower must use the established address. 12 C.F.R. §§ 1024.35(a), (c), 1024.36(a), (b). "[R]eceipt at the designated address is necessary to trigger RESPA duties." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013). "Communication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer." *Id.*

## II. FACTUAL BACKGROUND

Bank of America initially serviced Ms. Warren's mortgage loan. In a three-page "welcome letter" dated March 21, 2013, Green Tree informed her that effective April 1, 2013, it would be the new servicer. Page two contained a "NOTICE ABOUT YOUR RIGHTS" under RESPA, Aplt. App., Vol. 1 at 178, stating:

> Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights. . . . A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, **PO Box 6176**, Rapid City, SD 57709-6176.

*Id.* (emphasis added). We shall refer to the designated QWR address as "Box 6176." On page three, Green Tree informed Ms. Warren that "[a]ny questions, complaints or inquiries you have regarding your loan may always be directed in writing to our Customer Service Department at . . . **PO Box 6172**[,] Rapid City, SD 57709-6172." *Id.* at 179 (emphasis added). We shall refer to this address as "Box 6172."

Ms. Warren wrote a letter to Bank of America and Green Tree, also dated March 21, 2013, and addressed to Green Tree in St. Paul, Minnesota ("First Letter"). After expressing her understanding that Green Tree was taking over the servicing as of April 1, Ms. Warren asked for written confirmation that her mortgage payments were paid through February 2014. About a month later, Green Tree sent a letter acknowledging receipt of the First Letter, stating that her inquiry was under review, and informing her that if she had "any questions or comments," she could contact

- 3 -

customer service at Box 6172. *Id.* at 181. The letter also provided customer-service telephone and fax numbers.

On May 9, 2013, Green Tree responded substantively to Ms. Warren's request. The only address on the response was Box 6172, which was printed on the letterhead as Green Tree's return address along with telephone and fax numbers. Green Tree told Ms. Warren to call if she had "any questions." *Id.*, Vol. II at 198.

Over the next year, Ms. Warren sent four more letters (the last authored by her attorney) to Box 6172 alleging continued errors in her account. Each time, Green Tree responded with an acknowledgment letter substantially identical to the first and informing Ms. Warren that she could contact customer service at the address in its letterhead—Box 6172—if she had "any questions or comments." *Id.* at 216, 228, 229, 253. Green Tree also provided a substantive response to Ms. Warren's second, third, and fourth letters. Each one, like the first substantive response, set forth only the Box 6172 address in the letterhead and told her she could call the listed number if she had "any further questions or concerns." *Id.* at 219, 232, 245.

In addition to this correspondence, Green Tree sent Ms. Warren Monthly Informational Statements. Twelve of them, covering the period from May 9, 2013 through August 9, 2014, appear in her appellate appendix. These statements contained different mailing addresses for different types of correspondence a borrower might send. On the front, the statements listed Box 6172 as the "correspondence address" to which Ms. Warren could send "inquiries." *E.g.*, *id.*, Vol. I at 182. The Box 6172 address was also listed on the back under the heading

- 4 -

"Correspondence/Complaints." *E.g.*, *id.* at 183. And immediately below that address, the first six statements provided: "**For First Lien Mortgage Loan Customers Only:** Pursuant to § 6 of RESPA, a 'Qualified Written Request' regarding the servicing of your loan must be sent to [Box 6176]." *E.g.*, *id.* Similarly, the last six statements provided, also immediately below the "Correspondence/Complaints" address on the back: "**Designated Address for Qualified Written Requests, Notices or [sic] Error and Requests for Information:** Green Tree has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176 . . . ." *E.g.*, *id.*, Vol. II at 231.

### III. PROCEDURAL HISTORY

Ms. Warren sued Bank of America and Green Tree, asserting five claims. She obtained a clerk's entry of default against both defendants. After Ms. Warren moved for a default judgment, Green Tree moved to set aside the entry of default. While those motions were pending, Ms. Warren settled with Bank of America and stipulated to the dismissal with prejudice of all claims except her RESPA claim against Green Tree. The district court concluded that the proper method for dismissing all but the RESPA claim was for Ms. Warren to file an amended complaint, so the court converted the dismissal stipulation into a motion for leave to amend under Federal Rule of Civil Procedure 15.

Ms. Warren amended her complaint to allege one claim—that Green Tree had not complied with its RESPA obligation to provide adequate responses within

- 5 -

30 days to each of her five letters, all of which she characterized as QWRs. The district court concluded that the clerk's entry of default was directed at a superseded pleading (the original complaint) and therefore directed the clerk to set aside the entry of default. The court also denied as moot Ms. Warren's motion for default judgment and Green Tree's motion to set aside the entry of default. Green Tree then moved for summary judgment. The district court granted that motion based on its conclusion that there was no genuine dispute of material fact that Green Tree had properly established Box 6176 as the exclusive address for receiving QWRs and that Ms. Warren had not sent any QWRs to that address. Ms. Warren appeals.

## IV. **DISCUSSION**

Ms. Warren's primary argument is that the district court erred in granting the motion for summary judgment. In the alternative, she contends the court should not have set aside the clerk's entry of default.

### A. *The district court properly granted summary judgment to Green Tree.*

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014) (internal quotation marks omitted). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party." *Fields*, 753 F.3d at 1009 (internal quotation marks omitted).

Ms. Warren argues that Green Tree established Box 6172 as a QWR address. She claims that Green Tree's five acknowledgment letters listed only Box 6172 as the address to which she could send "requests for information or notices of error about her loan servicing." Aplt. Opening Br. at 12. She also contends that she sent the First Letter before Green Tree sent her any notice designating a specific address for receipt of QWRs. She points to the statement in the welcome letter indicating that she could "always . . . direct[]" "[a]ny questions, complaints or inquiries" to Box 6172. Aplt. App., Vol. I at 179. And she directs our attention to the front of the Monthly Informational Statements, where she was told she could send "inquiries" to Box 6172. *E.g.*, *id.*, Vol. I at 182. She also maintains that Green Tree's notices about where she was required to send QWRs were not "clear and conspicuous," as required under 12 C.F.R. § 1024.32(a)(1), and that Green Tree's substantive responses to four of her letters provide further evidence of Green Tree's intent to establish Box 6172 as its QWR address.[1] We address Ms. Warren's arguments as follows.

First, as to when she received notice of the QWR address, the welcome letter was dated March 21, 2013, the same date listed on her First Letter to Green Tree, and Ms. Warren testified that she received it "on or about" that date. *See* Aplt. App. at 151-52. Even if we credit her allegation that she sent the First Letter before

---

[1] Ms. Warren makes this argument on page 16 of her opening appellate brief but appears to disclaim it in her reply brief, stating that her focus is not on Green Tree's responses to her letters but on "its actions in directing her where to send her correspondence," Reply Br. at 6. We will nonetheless consider this argument.

receiving any notice from Green Tree establishing a QWR address, Green Tree was

not yet the servicer, and RESPA's response obligations are triggered when the

"*servicer* of a federally related mortgage loan receives a [QWR]." 12 U.S.C.

§ 2605(e)(1) (emphasis added). Ms. Warren has not suggested that Green Tree

received the First Letter after it took over as the servicer, nor has she offered any

relevant authority for her implied argument that a successor servicer has an

obligation under RESPA to respond to a QWR sent before it actually takes over

servicing.[2]

Second, the welcome letter clearly and conspicuously established a QWR

address. According to the Official Bureau Interpretations of Regulation X, the notice

of an exclusive QWR address "is subject to the clear and conspicuous requirement"

---

[2] Ms. Warren relies on *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011), but *Catalan* offers no obvious support for her point. In *Catalan*, a borrower sent a letter to the United States Department of Housing and Urban Development ("HUD") detailing alleged errors in the servicing of a mortgage loan. *Id.* at 682. HUD forwarded the letter to the loan servicer. *Id.* The Seventh Circuit reasoned that the servicer was obligated to treat the letter as a QWR because HUD was acting on behalf of the borrower when it forwarded the letter. *Id.* at 688. The court pointed to RESPA's requirement that QWRs must be "received 'from the borrower (or an agent of the borrower).'" *Id.* (quoting 12 U.S.C. § 2605(e)(1)(A)). Here, Ms. Warren sent a copy of the First Letter directly to Green Tree (although not to Box 6176), so we fail to see how *Catalan* applies. Moreover, even assuming Bank of America had some obligation to treat the letter as a QWR and forward it to Green Tree in anticipation of the servicing transfer, Bank of America was not acting as Ms. Warren's agent.

of 12 C.F.R. § 1024.32(a)(1).[3] 12 C.F.R. Pt. 1024, Supp. I, Subpart C, §§ 1024.35(c), 1024.36(b). Even accepting Ms. Warren's view that the inquiry must be made from the perspective of an ordinary consumer,[4] we see no genuine issue of fact concerning whether the notice in the welcome letter was clear and conspicuous. When read in isolation, the statement in the welcome letter indicating that Ms. Warren could "always . . . direct[]" "[a]ny questions, complaints or inquiries" to Box 6172, Aplt. App., Vol. I at 179, might suggest that Green Tree agreed to receive QWRs at Box 6172. But the welcome letter also contained the express designation of Box 6176 as the address to which Ms. Warren must send any QWRs. This designation appeared on its own page inside a box titled "NOTICE ABOUT YOUR RIGHTS," and it specifically referenced RESPA and defined a QWR. *Id.* at 178. When read in the context of the entire welcome letter, the statement that Ms. Warren could always direct any inquiries to Box 6172 did not establish Box 6172 as an address for receipt of QWRs.

Third, the acknowledgment letters did not inform Ms. Warren or even imply that, as she puts it, she could send "requests for information or notices of error" to

---

[3] The regulation provides: "Except as otherwise provided in this subpart, disclosures required under this subpart must be clear and conspicuous, in writing, and in a form that a recipient may keep." 12 C.F.R. § 1024.32(a)(1).

[4] Ms. Warren did not make this "ordinary consumer" argument in the district court. Although we do not decide that RESPA's "clear and conspicuous" requirement must be viewed from this perspective, her arguments fail to convince us that an ordinary consumer would be confused as to whether Green Tree designated Box 6176 as its only QWR address.

Box 6172. Aplt. Opening Br. at 12. Instead, they told her she could send "questions or comments" to Box 6172. *See, e.g.*, Aplt. App., Vol. I at 181. To establish a QWR address, a loan servicer must tell the borrower that she must send "notices of error" or "requests [for] information" to the designated address. 12 C.F.R. §§ 1024.35(c), 1024.36(b). The acknowledgment letters only referred to "questions or comments." We therefore conclude the acknowledgment letters indisputably did not establish Box 6172 as a QWR address

In *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415 (N.D. Tex. Sept. 7, 2010) (unpublished), the Northern District of Texas reached a similar conclusion in a case involving materially identical language contained in a welcome letter and later correspondence indicating the borrowers could contact Green Tree at a different address. In granting summary judgment to Green Tree on the borrowers' RESPA claim, the court concluded:

> Green Tree designated in the notice of transfer an exclusive address for sending qualified written requests. Although subsequent correspondence sent to the Steeles indicated that they could contact Green Tree or its attorneys at other addresses, Green Tree did not indicate that it would receive qualified written requests at any other address. Rather, through the other addresses and telephone numbers, Green Tree provided the Steeles with informal avenues to obtain other information. Because a reasonable trier of fact could only find that Green Tree established an exclusive location at which it would accept qualified written requests, and that the Steeles never sent a proper request to that address, Green Tree had no duty under RESPA to respond to the Steeles's letters.

*Id.* at *3. As we did in *Berneike*, 708 F.3d at 1147, we find the *Steele* court's analysis persuasive and in accord with our own.

Fourth, we reject Ms. Warren's argument that the Monthly Informational Statements established Box 6172 as a QWR address. The front page of the statements stated only that she could send inquiries to Box 6172, not notices of error, requests for information, or QWRs. Likewise, the back page of the statements told her she could send correspondence or complaints to Box 6172, but immediately below the statements instructed that QWRs must be sent to Box 6176. Contrary to Ms. Warren's argument, the fact that the QWR notice was titled "For First Lien Mortgage Loan Customers Only" does not create a disputed fact issue regarding whether an ordinary consumer would be confused about where she must send a QWR. An ordinary consumer, faced with the "Correspondence/Complaints" address (Box 6172) immediately adjacent to the QWR address (Box 6176), could not justifiably believe she could send a QWR to Box 6172.

Finally, we find unavailing Ms. Warren's suggestion that Green Tree's responses to her letters show that Green Tree also established Box 6172 as a QWR address. We rejected a similar argument in *Berneike*—that a lender "waived its statutory right to receive all future QWRs at its specified address because it responded [to the borrower's correspondence] without asserting [the] correspondence was sent to the wrong address." 708 F.3d at 1149. *Accord Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) (per curiam) (holding that "[a]s long as a servicer complies with the [regulatory] notice requirements . . . for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee

at that address (who may not have training in RESPA compliance) in fact responds to that letter").

B.  ***The district court did not err in setting aside the entry of default.***

Ms. Warren alternatively contends that the district court erred in setting aside the clerk's entry of default against Green Tree.  Our review is for an abuse of discretion.  *See Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003).

In her opening brief, Ms. Warren's only contention is that Green Tree made no good-cause showing in its motion to set aside the entry of default.  This argument overlooks both the district court's denial of Green Tree's motion as moot and the court's reasoning that the entry of default must be set aside because it was directed at a superseded pleading (the original complaint).

In her reply, Ms. Warren states that she was given no alternative to filing an amended complaint and suggests that the district court ordered her to do so "for no apparent reason other than to allow the Court to rule her motion for default judgment moot."  Reply Br. at 7.  But the district court ruled that filing an amended complaint was the necessary procedural course arising from Ms. Warren's own action in stipulating to the dismissal, purportedly under Fed. R. Civ. P. 41(a), of less than all claims against Green Tree.  *See* Aplt. App., Vol. I at 110-11.[5]  She has not argued

---

[5]    In reaching that conclusion, the district court relied in part on *Gobbo Farms & Orchards v. Poole Chemical Co.*, 81 F.3d 122, 123 (10th Cir. 1996), for the proposition that Rule 41(a) does not apply to the "dismissal of less than all claims in an action," and on *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392

(continued)

otherwise.  We therefore discern no abuse of discretion in the district court's order directing the clerk to set aside the entry of default.

## V.  **CONCLUSION**

The district court's judgment is affirmed.[6]

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

---

(9th Cir. 1988), for the same principle and for its view that amendment is the appropriate mechanism for dismissing less than all claims against a defendant.

[6] In view of our disposition, we decline to consider Green Tree's request that we affirm on the alternate ground of judicial estoppel.