**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

PATRICIA CUERVO,

    Plaintiff - Appellant,

v.

TODD SORENSON, Captain, Mesa
County Sheriff's Office; TRAVIS
CHRISTENSEN, Sergeant, Mesa County
Sheriff's Office; MARCO MONTEZ,
Sergeant, Mesa County Sheriff's Office;
TIM ORR, Sergeant, Mesa County
Sheriff's Office; JENNA REED,
Investigator, Mesa County Sheriff's Office;
ERIC OLSON, Investigator, Mesa County
Sheriff's Office; CURTIS CALLOW,
Deputy, Mesa County Sheriff's Office;
DONALD LOVE, Deputy, Mesa County
Sheriff's Office; SETH PARKER, Deputy,
Mesa County Sheriff's Office; THOMAS
STUCKENSCHNEIDER, Deputy, Mesa
County Sheriff's Office; JOSH SANCHEZ,
Deputy, Mesa County Sheriff's Office;
RYAN REASONER, Deputy, Mesa
County Sheriff's Office; GARTH COWLY,
Deputy, Mesa County Sheriff's Office;
SALMINEO ESPINDOLA, Deputy, Mesa
County Sheriff's Office; DEVRIN
SANDELL, Deputy, Mesa County Sheriff's
Office; MIKE MILLER, Investigator,
Mesa County Sheriff's Office; JAMIE
PENNAY, Sergeant, Mesa County Sheriff's
Office,

    Defendants - Appellees.
_____

No. 22-1387

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:20-CV-00671-WJM-GPG)**

_____

Sean Michael McDermott, McDermott Stuart & Ward LLP, Denver, Colorado, for Plaintiff-Appellant.

Chris W. Brophy (Andrew B. Clauss with him on the briefs), Dinsmore & Shohl LLP, Denver, Colorado, for Defendants-Appellees.

_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

A district court generally may not rely on facts emanating from outside of a plaintiff's well-pleaded complaint when it grants a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). But in this 42 U.S.C. § 1983 lawsuit, the district court dismissed Plaintiff's case after it granted qualified immunity based on documents outside the complaint that Plaintiff neither attached, incorporated, nor relied upon. Our jurisdiction arises under 28 U.S.C. § 1291. Because the district court erred by relying on documents outside of the pleadings, and because we cannot affirm its dismissal based on the documents properly before us, we reverse.

I.

Officers in and around Mesa County, Colorado were on the hunt for a stolen Sno-Cat—a large, tracked machine, 8' wide, 7'5" tall, and 16'3" long. They suspected Plaintiff's son had parked the Sno-Cat in Plaintiff's garage, so they rang her doorbell. Nobody answered, but at least one officer believed he observed

someone inside the residence. Plaintiff's property included both the garage and an attached residence—but only the garage could have housed the Sno-Cat.

Two hours later, officers obtained a search warrant authorizing the search of Plaintiff's property for the Sno-Cat. The Special Weapons and Tactics ("SWAT") units of the Mesa County, Colorado Sheriff's Office ("MCSO") and Grand Junction Police Department ("GJPD") descended upon Plaintiff's residence to execute the warrant. Officers made no further attempt to establish contact with anyone who might have been inside the residence when they returned with the warrant, but instead fired or helped fire chemical munitions into the residence.[1] Officers then entered the residence and searched for the Sno-Cat. The search of the home turned up no humans—only a dog.

The claims at issue in this case relate to damage caused by officers' unlawful forced entry into the residence, use of hazardous chemicals, and failure to close the windows and secure the doors when they left—which resulted in further property damage from looters. According to Plaintiff, officers caused over $50,000 in damage.

Plaintiff sued over two dozen officers from multiple departments, asserting Fourth and Fifth Amendment violations under 42 U.S.C. § 1983. The defendants

---

[1] Officers did not knock and announce their presence before firing munitions or entering the residence. So, other than the unverified, nonspecific perception of one officer from two hours earlier, the officers lacked any evidence that a person occupied the residence—and officers wholly lacked any evidence of imminent danger.

3

claimed qualified immunity and moved to dismiss Plaintiff's complaint under Rule 12(b)(6). The district court granted the motions. In reaching its decision, the district court considered documents outside the pleadings—the search warrant, supporting affidavit, and GJPD's one-page, unsigned after action report ("AAR")—despite Plaintiff's objection that the district court could not consider outside documents without converting the Rule 12(b)(6) motion to a motion for summary judgment and allowing the parties to conduct discovery.

Plaintiff then filed a more detailed First Amended Complaint ("FAC"), pleading only a Fourth Amendment § 1983 claim against seventeen MCSO officers ("Defendants"). Defendants moved to dismiss the FAC under Rule 12(b)(6) and asserted qualified immunity. The district court again granted qualified immunity and dismissed Plaintiff's claims. In its analysis, the district court considered the search warrant, supporting affidavit, and AAR, specifically relying on facts within the AAR. Plaintiff timely appealed the district court's order dismissing her FAC.

On appeal, Plaintiff contends the district court erred in dismissing her FAC on qualified immunity grounds. Defendants ask us to affirm the grant of qualified immunity. Defendants appear to alternatively seek affirmance on the alternate ground that Plaintiff failed to state a claim upon which relief may be granted because she failed to adequately plead that each defendant personally participated in the

4

alleged constitutional violations.[2]  We first address Defendants' alternative argument. We then address the qualified immunity issue.

## II.

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss, including a dismissal based on qualified immunity.  Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013)).  Complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff who fails to plead a plausible claim is subject to dismissal.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  We accept all well-pleaded factual allegations as true and view them "in the light most favorable to the plaintiff."  Truman, 1 F.4th at 1235 (citing Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007)).

## III.

We first examine whether the district court erred in considering the search warrant, the affidavit supporting the warrant, and the AAR without converting the motion to dismiss into a motion for summary judgment.  Generally, a court may consider only the contents of a complaint when ruling on a motion to dismiss. Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co., 21 F.4th 704,

---

[2] The *headings* in Defendants' brief suggest Defendants only address personal participation insofar as it relates to prong one of qualified immunity.  But the textual *argument* also advances the theory that we must affirm because Plaintiff failed to meet the pleading requirements for a § 1983 claim because she didn't plead personal participation.  Accordingly, we exercise our discretion to address the alternative argument.

709 (10th Cir. 2021) (citing Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1146 (10th Cir. 2013)).  But courts may also consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic.  See Berneike, 708 F.3d at 1146 (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)).

When the district court considers documents outside the pleadings without a valid exception, it must convert the motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 12(d); Carter v. Stanton, 405 U.S. 669, 671 (1972).  The district court must inform the parties of its conversion and give the parties a reasonable opportunity to accumulate and present all relevant evidence.  Fed. R. Civ. P. 12(d); Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991) (citing Ohio v. Peterson, Lowry, Rall, Barber & Ross, 585 F.2d 454, 457 (10th Cir. 1978)).  Failure to do so constitutes reversible error unless we can affirm the district court's dismissal under Rule 12(b)(6), considering only the pleadings and any documents properly before us.  Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998) (citing Miller, 948 F.2d at 1565–66).

Plaintiff did not attach documents to her FAC or expressly incorporate any documents by reference.  But the district court relied on facts within the AAR, finding that Plaintiff referenced the AAR in Paragraph 56 of the FAC—even though

6

Defendants did not ask the district court to consider the AAR.[3]  Plaintiff contends the district court erred by relying on the AAR.  We agree.

Defendants contend the district court appropriately considered the AAR because Plaintiff attached the document to her briefing on Defendants' motion to dismiss her original complaint.  But this argument misses the mark.  Although Plaintiff indeed attached the AAR to a document she filed earlier in the case, the document was part of a *prior* round of motions to dismiss based on a *prior* pleading, and in response to specific allegations from *prior* defendants.  In that context, Plaintiff attached the AAR to show its deficiencies and to bolster her asserted request for discovery.  But Plaintiff never relied on the AAR to establish her claims in any document she filed opposing Defendants' motion to dismiss her FAC.

Because the FAC does not reference the AAR, and because the AAR is not central to any claim in the FAC, the district court could not properly consider the AAR when ruling on a motion to dismiss the FAC.[4]  Instead, if the district court

---

[3] Paragraph 56 of the FAC states, in full:

> Reports provided by the Mesa County Sheriff's Office and the Grand Junction Police Department do not detail which of the Defendants actually entered beyond the garage at the residence at 1867 S Deer Park Circle, nor do they detail which Defendants launched chemical weapons into the structure or otherwise physically damaged the property.

[4] We do not reach the questions of whether the district court improperly considered the warrant or the supporting affidavit, or whether a district court is constrained by any limitations in considering such documents, because Plaintiff did not brief these issues (or, for that matter, even specifically object to the district

wished to consider the AAR, our precedents required it to convert the motion to dismiss the FAC into a motion for summary judgment and allow any appropriate discovery. Miller, 948 F.2d at 1565 (citing Peterson, 585 F.2d at 457). The district court failed to do so and thus committed error.

IV.

Having concluded that the district court erred by considering the AAR, we conduct a de novo review under Rule 12(b)(6). See Lowe, 143 F.3d at 1381 (citing Miller, 948 F.2d at 1566). We disregard the AAR and look only to well-pleaded facts and reasonable inferences from the FAC, the search warrant, and the affidavit to determine whether Plaintiff has alleged a plausible claim for relief. See id. (citing Miller, 948 F.2d at 1566).

We affirm the district court's dismissal only if we can do so based on the facts properly within our consideration. Id. (citing Miller, 948 F.2d at 1566). Otherwise, we must reverse and remand for the district court to conduct further proceedings— presumably so the district court may (if it chooses to consider documents outside the pleadings) properly convert the motion to dismiss Plaintiff's FAC into a motion for summary judgment by providing notice of conversion and allowing for appropriate discovery so both parties may present relevant evidence. See Brown v. Zavaras, 63

---

court's consideration of the documents). See United States v. Egli, 13 F.4th 1139, 1149 (10th Cir. 2021) (applying waiver because party failed to raise issue on appeal).

F.3d 967, 970, 972 (10th Cir. 1995) (reversing and remanding for the district court to properly convert to a motion for summary judgment).

Defendants argue that Plaintiff did not state a plausible claim because she failed to plead that each of them personally participated in the alleged constitutional violation. Because the district court granted qualified immunity, it did not decide this question. Section 1983 allows an individual to sue a government actor in his individual capacity for violating her constitutional rights and recover money damages from resulting injuries that the actor caused by his violation. 42 U.S.C. § 1983. A plaintiff in a § 1983 action must allege that each defendant is subject to personal liability based on his own actions. See Brown v. Montoya, 662 F.3d 1152, 1163–65 (10th Cir. 2011) (holding that a single generalized allegation of conduct was insufficient to allege personal conduct by fifty-four defendants).

Defendants claim Plaintiff's allegations are insufficient because she copied and pasted identical allegations of conduct for each defendant. But Defendants point to no rule—and we find none—stating that a party cannot sue multiple defendants for the same wrongful conduct.[5] And Plaintiff did not merely allege general conduct by "Defendants." Instead, she pleaded each defendant's conduct in a separate paragraph, alleging that each defendant acted by *participating*, *entering* and

---

[5] We value individualized allegations in a § 1983 suit, particularly when each defendant has different powers and duties. See Brown, 662 F.3d at 1165. But here, all defendants served on the SWAT team. We can infer that all defendants had identical or similar duties. So we do not find Plaintiff's identical allegations suspect—especially in the absence of discovery allowing her to more specifically describe each defendant's purported conduct.

*searching*, and *aiding* and *abetting*. See Twitter, Inc. v. Taamneh, 598 U.S. 471, 489 (2023) (holding that aiding and abetting involves culpable conduct by the individual and does not merely rely on the wrong acts of another). These allegations provided each defendant with "fair notice as to the basis of the claims against him or her" because they made clear "exactly *who* is alleged to have done *what* to *whom*." Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008). So, limiting our review to the documents properly before us, we conclude that Plaintiff plausibly alleged individual action by each defendant.

## V.

We next consider whether the facts properly before this Court allow us to affirm the district court's grant of qualified immunity. A defendant who asserts qualified immunity in a § 1983 suit—including in a motion to dismiss—is presumptively immune from suit. Truman, 1 F.4th at 1235 (quoting Est. of Smart by Smart v. City of Wichita, 951 F.3d 1161, 1168 (10th Cir. 2020)). A plaintiff can overcome the presumption by showing that "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." Id. (citing Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014)). On Rule 12(b)(6) review, when a complaint is susceptible to multiple interpretations, we construe it liberally to allege a constitutional violation. See Peterson v. Jensen, 371 F.3d 1199, 1202–03 (10th Cir. 2004) (citing Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th

Cir. 1999) (viewing the complaint in the light most favorable to the non-moving party in a Rule 12(b)(6) analysis)).

A.

To satisfy the first prong to overcome qualified immunity, Plaintiff alleges that Defendants violated her constitutional rights under the Fourth Amendment. The Fourth Amendment protects the right of the people to be secure in their houses against unreasonable searches. U.S. CONST. amend. IV; accord Payton v. New York, 445 U.S. 573, 585–86 (1980) (quoting United States v. U.S. Dist. Ct., 407 U.S. 297, 313 (1972)) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."). A search inside a home is presumptively unreasonable apart from the authority of a search warrant or an exception approved by the Supreme Court. United States v. Najar, 451 F.3d 710, 713 (10th Cir. 2006) (first quoting Payton, 445 U.S. at 586; and then quoting Illinois v. McArthur, 531 U.S. 326, 330 (2001)).

Plaintiff argues Defendants' search was unreasonable because they entered her residence without authority. A search warrant must describe with particularity the place to be searched and the item(s) to be seized. U.S. CONST. amend. IV. A valid warrant authorizes law enforcement to search only at the stated place and only for the stated item(s). See Mink v. Knox, 613 F.3d 995, 1010 (10th Cir. 2010) (applying the particularity requirement to limit searches not only as to the *location* the warrant specifies but also to the *scope* of the specified evidence). This means officers may search at the listed location, but only in areas where the listed item could be. See,

11

e.g., United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993) (quoting United States v. Ross, 456 U.S. 798, 820–21 (1982)) (concluding a warrant provided authority to enter spaces within the search premises where officers might find the specified items).

Here, the search warrant authorized a search of Plaintiff's property for the Sno-Cat.  Under our precedent, this means Defendants could search any place on Plaintiff's property where they could find the Sno-Cat.  Plaintiff pleaded the Sno-Cat's dimensions and stated that it could fit only inside the garage—not the residence.  The warrant's description of the Sno-Cat as containing a toolbox on its "right rear side" merely described the Sno-Cat and did not add a separate item for which Defendants could search.  So, the warrant did not authorize Defendants to search for the Sno-Cat inside the residence itself (rather than the garage) because the Sno-Cat obviously could not fit inside the residence.

Plaintiff also argues Defendants' search was unreasonable because they used excessive force.  When a search warrant authorizes officers to search inside a home, the officers must knock and "announce their presence and authority before entering." United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996) (citing Wilson v. Arkansas, 514 U.S. 927, 935–36 (1995)) (applying 18 U.S.C. § 3109 as a reasonableness inquiry under the Fourth Amendment).  Exigent circumstances excuse this knock-and-announce requirement when officers reasonably believe an emergency exists.  Id. (quoting United States v. Maden, 64 F.3d 1505, 1509 (10th Cir. 1995)).  The emergency must be more than a general concern for safety.  United States v. Stewart,

12

867 F.2d 581, 585 (10th Cir. 1989).  Officers' knowledge of unknown occupants or firearms in a house does not justify failure to knock and announce—nor does it justify destroying property.  See id.; Moore, 91 F.3d at 98–99.

Defendants did not knock and announce their presence or authority before shooting chemical munitions and entering.  Defendants rely on facts in the AAR to demonstrate their mistaken belief that a dangerous individual with access to weapons occupied the house.  But we do not consider facts arising out of the AAR and no facts within the FAC, warrant, or affidavit show exigent circumstances.  No officer identified any specific danger or occupant.  Thus, the warrant did not expressly authorize Defendants to forcibly enter Plaintiff's home without knocking and announcing or to shoot munitions that physically damaged her home.[6]

We conclude that under the facts properly within our consideration, Defendants lacked authority for their search of the residence because they exceeded the scope and authority of the warrant and lacked a valid exception.[7]  See Ross, 456

---

[6] Plaintiff implies that Defendants should have used thermal imaging to learn that the residence was unoccupied before assaulting it.  But Defendants could not have done so without authority to conduct a search inside the residence.  See Kyllo v. United States, 533 U.S. 27, 34 (2001) (thermal imaging generally constitutes a search).

[7] The district court mentioned the protective sweep warrant exception but did not find that a protective sweep occurred.  Defendants do not develop a protective-sweep argument.  See Lundstrom v. Romero, 616 F.3d 1108, 1128 (10th Cir. 2010) (citing Najar, 451 F.3d at 717) (government actor bears the burden to show the existence of an exception to the warrant requirement).  So we do not consider whether the protective sweep exception applies.  See Garrett v. Selby Connor

13

U.S. at 825 (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)).  Defendants

lacked justification for their forcible entry.  Thus, Plaintiff sufficiently alleged

Defendants violated her Fourth Amendment rights based on Defendants' entry into

her residence (apart from the garage)—both physically and by shooting chemical

munitions—and their use of excessive force.[8]

B.

We now examine the second prong of the qualified immunity analysis.  We

conclude Defendants violated Plaintiff's clearly established Fourth Amendment

rights.

"[A] right is clearly established when our precedent encompasses '"materially

similar conduct" or applies with "obvious clarity" to the conduct at issue.'"  Sanchez

v. Guzman, 105 F.4th 1285, 1292–93 (10th Cir. 2024) (quoting Shepherd v. Robbins,

55 F.4th 810, 815 (10th Cir. 2022)).  Precedent must place the "constitutional

question beyond debate," Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White

v. Pauly, 580 U.S. 73, 79 (2017)), and provide "fair warning to a defendant,"

Sanchez, 105 F.4th at 1293 (quoting Shepherd, 55 F.4th at 815).  In the Fourth

Amendment context, we require a particularly high level of specificity and even more

---

Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005) (issues inadequately briefed are waived).

[8] We express no opinion on whether, after discovery and full summary judgment briefing, Plaintiff may establish her claims in this case.  We conclude only that the FAC pleaded sufficient allegations to state a constitutional violation under Fed. R. Civ. P. 12(b)(6).

closely analogous facts than otherwise; thus we look for precedent that "'squarely governs' the specific facts at issue." Kisela, 584 U.S. at 104–05 (quoting Mullenix v. Luna, 577 U.S. 7, 12–13, 18 (2015)).

At least two Tenth Circuit cases provided fair warning that the warrant did not authorize Defendants' search of the residence. In United States v. Angelos, 433 F.3d 738, 744 (10th Cir. 2006), the search warrant at issue authorized a search for drugs and related items located in the trunk of a car and in a safe that the officers believed was in a basement. The warrant stated the location of the search as the "residence/premises" and listed its street address, without limitation. Id. at 745. We held that the officers exceeded the scope of the warrant and acted unreasonably in violation of the Fourth Amendment when they searched the residence in places other than the basement. Id. at 745–46. In short, the broad search warrant did not authorize officers to search spaces in which the item in question could not be located. Thus, Angelos notified Defendants at a sufficient level of specificity that the search warrant did not authorize Defendants' search of the residence because the Sno-Cat could not have been in the residence—indeed, officers believed the Sno-Cat was in the garage, not in the residence.

Similarly, in Peterson, 371 F.3d at 1201, officers obtained a valid search warrant authorizing them to search a particular residence for the belongings of two individuals. Officers searched the specified residence even after learning that the two individuals no longer resided there. Id. at 1202–03. In so doing, the officers violated clearly established law—even though the warrant stated that it authorized search of

15

the residence—because they should have known that searching the residence would not fulfill the purpose of the warrant.  Id.  Thus, Peterson clearly notified Defendants that they violated Plaintiff's rights by searching for the Sno-Cat in her residence because they should have known that this did not fulfill the purpose of the warrant.

And insofar as Plaintiff alleges that officers damaged her property, decades of jurisprudence clearly establishes that Defendants violated the Fourth Amendment by forcibly entering and destroying Plaintiff's property without knocking and announcing because the record reflects no exigencies.  In United States v. Nielson, 415 F.3d 1195, 1197–98 (10th Cir. 2005), officers knew that the defendant had previously possessed firearms in his home and feared for their safety because they believed the residents in the home would arm themselves if the officers knocked and because the defendant had "the potential for violence."  But this knowledge and belief did not constitute reasonable suspicion that justified a no-knock entry, so when the officers entered before knocking and announcing, they violated the Fourth Amendment.  Id. at 1201–02.  And in Moore, 91 F.3d at 97–98, officers announced their presence at virtually the same instant they used a battering ram to batter down the door.  The officers' knowledge that the occupants were armed did not constitute exigent circumstances justifying their immediate, destructive entry because the officers failed to present facts showing specific fear for their safety.  Id. at 98.

Here, Defendants knew even less than the Nielson officers—only that an unidentified person had possibly occupied the house earlier in the day.  And, like the Moore officers, Defendants lacked any specific fear for their safety.  These materially

16

similar fact patterns show at a sufficient level of specificity that Defendants violated Plaintiff's clearly established Fourth Amendment rights by failing to knock and announce their presence.  Plaintiff, therefore, satisfies the second prong necessary to overcome Defendants' qualified immunity defense at the pleading stage.

Plaintiff's FAC, along with the documents properly within our consideration, show Plaintiff alleged a plausible § 1983 claim against each defendant and overcomes the presumption of qualified immunity.  So we cannot affirm the district court's finding of qualified immunity and dismissal of Plaintiff's FAC.  We reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.