FILED
United States Court of Appeals
Tenth Circuit

March 5, 2025

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

GARY WEIDNER, III,

    Plaintiff - Appellant,

v.

CLAIRE MCHALE; KRISTIN AMES, in
her individual capacity,

    Defendants - Appellees.

No. 24-1145
(D.C. No. 1:23-CV-00339-NYW-SBP)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Gary Weidner, III, appeals the district court's dismissal of his amended complaint for failure to state a claim under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and conspiracy, and for failure to state various state law claims, including intentional infliction of emotional distress. The claims stemmed from his allegation that Claire McHale falsely accused him of sexual assault, causing Detective Kristin Ames to initiate

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

an unsuccessful prosecution against him.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual Allegations*

The amended complaint alleged the following facts.[1]  In 2019 and 2020, Ms. McHale pursued a consensual sexual relationship with Mr. Weidner, first in Pennsylvania and later in Colorado, intending to falsely accuse him later of sexual assault.  The consensual nature of the relationship was well-documented through photographs and text messages on Ms. McHale's cellphone.

In July 2020, Ms. McHale told Detective Ames of the Arvada Police Department in Colorado that Mr. Weidner had repeatedly raped her for nearly six months.  Ms. McHale cut the initial interview short and canceled follow-up interviews over the next several months.  In November 2020, she sat for a second interview with Detective Ames and again accused Mr. Weidner of rape.

The amended complaint said these accusations were lies and that Ms. McHale selectively picked text messages and pictures from her phone to share with Detective Ames.  When Detective Ames asked Ms. McHale to provide all relevant messages and photos, she refused.  Despite having Ms. McHale's cellphone "in her grasp, in front of her, and within her power and control," Detective Ames "refused to extract the

---

[1] "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]."  *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

exonerating information from it." App., Vol. I at 17. Had Detective Ames "merely examined Defendant McHale's telephone," she "would have known all of McHale's statements to be false and known that no probable cause existed to arrest" Mr. Weidner. *Id.* The amended complaint further alleged, "It is also believed and therefore averred that Defendant Aimes [sic], at the time of this second interview, was in possession of information which completely exonerated" Mr. Weidner. *Id.*

Detective Ames conducted two recorded "pretext calls" between Ms. McHale and Mr. Weidner.[2] *Id.* But Detective Ames "utilized ten seconds of conversation to support her assertion that probable cause existed and willfully ignored the remainder of the conversation which was wholly exculpatory." *Id.*

Detective Ames omitted other information from the probable cause affidavit she prepared to obtain an arrest warrant, including that Ms. McHale withheld exculpatory text messages and photographs from her phone, cancelled interviews with police, and had previously alleged falsely to police that others had sexually assaulted her.

Police arrested Mr. Weidner on a warrant based on Detective Ames's affidavit. Prosecutors dismissed the charges against him mid-trial after learning Mr. Weidner was "also in possession of the *Brady* information that they purposely withheld, knowing that they could not meet their burden with that information in evidence." *Id.* at 18.

---

[2] Detective Ames was present with Ms. McHale during the two recorded phone calls between Mr. Weidner and Ms. McHale. Both calls occurred before Detective Ames sought a warrant.

3

After his arrest, Mr. Weidner was incarcerated for a period of time and "suffered emotional pain and suffering as a result of this prosecution." *Id.* at 19.

## B. *Procedural History*

### 1. Claims

Mr. Weidner brought eight claims. Under 42 U.S.C. § 1983, he alleged malicious prosecution (Count One), false arrest (Count Two), and conspiracy (Count Three) against Detective Ames and Ms. McHale. Under state law, he alleged malicious prosecution (Count Four), abuse of process (Count Five), and intentional infliction of emotional distress (Count Six) against Ms. McHale. And he sued both defendants for violating his Colorado state constitutional right to be free from malicious prosecution (Count Seven) and false arrest (Count Eight).

### 2. Motions to Dismiss

Ms. McHale and Detective Ames separately moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Detective Ames asserted a qualified immunity defense to the federal claims.

With her motion, Detective Ames attached as exhibits (1) a certified, partially redacted copy of the probable cause affidavit and (2) transcripts of the two pretext calls. She argued the district court could consider the former because the amended complaint referred to it, and the latter because the pretext calls were central to the allegations. Ms. McHale attached the same copy of the probable cause affidavit to her motion. Mr. Weidner opposed both motions but did not dispute the authenticity of these exhibits or object to the district court's consideration of them.

a. *Probable cause to arrest affidavit*

The probable cause affidavit described the following.[3]

In June 2020, Arvada police responded to a welfare check and found Ms. McHale lying curled up on the grass, apparently suffering a panic attack. She could not articulate what was going on, but seemed to say her therapist urged her to report a sexual assault to the police.

i. First interview

In July 2020, Detective Ames interviewed Ms. McHale, who said she and Mr. Weidner became close a few years ago and she viewed him like an older brother. In October 2019, Ms. McHale stayed the night at Mr. Weidner's grandmother's house. While Ms. McHale was highly intoxicated, Mr. Weidner initiated sex. She never told Mr. Weidner to stop nor did she physically resist. The next morning, she discovered Mr. Weidner had strangled her during sex, leaving bruises on her neck.

After describing these events to Detective Ames, Ms. McHale began feeling ill and said she was too emotional to continue the interview. Ms. McHale agreed to return for a second interview when she was "mentally ready to do so." App., Vol. I at 48. She did not return until November 2020.

---

[3] The name of the reporting party is redacted from the affidavit on file, but the record makes clear the redactions refer to Ms. McHale.

ii. Second interview

As recounted in the affidavit, at the second interview, Ms. McHale said Mr. Weidner once awakened her by trying to perform a sexual act. She also said that in late February 2020 in Jefferson County, Colorado, Mr. Weidner forced her to have sex while she was intoxicated and high on marijuana. At one point she was crying loudly and told him to stop, but he pushed her face into a pillow and continued. After, he told her to shower so she could wash off his "violation." *Id.* at 49.

Before and after the Jefferson County incident, Ms. McHale informed Mr. Weidner she did not want a sexual relationship with him. He seemed to acknowledge the statements and apologize, but then they would get intoxicated, Ms. McHale would "freeze up," and they would have sex. *Id.* During one conversation, Ms. McHale said, "You know that's assault," to which Mr. Weidner replied, "Yeah." *Id.*

iii. Pretext calls

The affidavit included the following content from Ms. McHale's November 2020 pretext calls with Mr. Weidner. They discussed the Jefferson County incident. Mr. Weidner said he did not remember Ms. McHale ever saying no or crying. He also said he did not remember pushing her face into a pillow, but he was sorry if he did.

Ms. McHale brought up how she had repeatedly told him she did not want a sexual relationship with him. Mr. Weidner responded, "There's nothing right about what I've done." *Id.* at 50. He said, "After we had that conversation where you said that you never wanted me to touch you again . . . we would lay down together and things would progress

6

and I wasn't sure what to do . . . I thought maybe if we progressed we could actually repair or build trust and I see now how f***ing wrong that was." *Id.*

Mr. Weidner said he never had malicious intent and it was not until now that he realized his were actions wrong. Ms. McHale responded that he had referred to the Jefferson County incident as a "violation." *Id.* Mr. Weidner said that was "because you would tell me after how much you hated it." *Id.*

Ms. McHale confronted Mr. Weidner about when he woke her up trying to perform a sexual act. He said he saw it as a joke but he realized how "f***ed up" it was to do that to her. *Id.*

Ms. McHale pressed Mr. Weidner on whether he really believed she was consenting. Mr. Weidner said he thought she consented up until he came to Colorado. When asked about his actions in Colorado, Mr. Weidner said, "I didn't see it at the time, but I never should have assaulted you and I am so sorry." *Id.* When asked why he did that, he said, "Part of it is I think because it was something I wanted so badly that I projected over it and that desire made me blind to things that were happening in the moment." *Id.* Mr. Weidner said he was not saying he purposefully ignored signs that Ms. McHale was not consenting, but rather his "own desires made [him] blind to things or to misinterpret them." *Id.*

Mr. Weidner said what he did was wrong and disgusting and thinks about it constantly, feels awful, and hates himself every day. He said he was "sorry for everything." *Id.* Ms. McHale asked if he was sorry for assaulting her, and he said he

was.  Ms. McHale said, "That was wrong.  That was rape," *id.*, to which Mr. Weidner responded, "I am so sorry.  I am so sorry for raping you."  *Id.*

Detective Ames attempted to contact Mr. Weidner for an interview, but he did not respond.  Mr. Weidner's attorney advised Detective Ames that Mr. Weidner would not make a statement but would turn himself in if charged.

b.  *Pretext call transcripts*

In addition to the statements recounted above in the probable cause affidavit, the pretext call transcripts revealed the following.

Ms. McHale repeatedly confronted Mr. Weidner about her accusations of sexual misconduct.  Mr. Weidner repeatedly denied purposefully ignoring signs that Ms. McHale was not consenting and said he thought she wanted the sexual contact.  He said he was also highly inebriated during their sexual encounters but was "not trying to excuse anything."  *Id.* at 70, 78.

Mr. Weidner repeatedly apologized to Ms. McHale, saying "[t]here is nothing right about what I have done" and "[e]verything is my fault."  *Id.* at 70, 79.  He said, "in hindsight," he "should have handled everything differently," and what he did "was wrong and disgusting and so many other things."  *Id.* at 78-79.  Further, he was "cutting [himself] off from the McHale's" because he "do[esn't] deserve to be part of that family."  *Id.* at 67.

3.  **District Court Opinion**

The district court dismissed all claims against both defendants.

a. *Malicious prosecution*

The district court dismissed the federal and state malicious prosecution claims against Detective Ames (Counts One and Seven) because the complaint failed to allege the absence of probable cause. The court said it could consider the probable cause affidavit and the transcripts of the pretext calls because they were referenced in the complaint, central to Mr. Weidner's claims, and undisputed as to authenticity.

The court explained it must assess probable cause by "(1) adding material information that was knowingly or recklessly omitted from the Affidavit by Detective Ames, and (2) disregarding false information she included knowingly or with reckless disregard for truth." App., Vol. I at 261 (citing *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015)).

The court found the amended complaint did not allege that Detective Ames knew Ms. McHale's allegations were lies, but rather alleged Detective Ames would have concluded the statements were false if she had more thoroughly investigated the contents of Ms. McHale's cellphone. The court said, "[t]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth." *Id.* at 264 (quoting *Metzler v. City of Colo. Springs*, 841 F. App'x 94, 98 (10th Cir. 2021)). The court noted that Mr. Weidner failed to provide any authority for his claim that Detective Ames recklessly disregarded the truth in the face of her "requesting all relevant information from Ms. McHale, reviewing the evidence Ms. McHale provided, thoroughly interviewing Ms. McHale, and attempting to contact

9

the alleged perpetrator, but opting against 'extract[ing]' additional information from Ms. McHale's cell phone." *Id.* at 262-63 (citation omitted).

The court also found Detective Ames accurately summarized Mr. Weidner's statements on the pretext calls. The call transcripts belied the amended complaint's conclusory allegation that the pretext calls "in totality and in context, [were] exculpatory." *Id.* at 264 (quoting *id.* at 18). They showed "Mr. Weidner repeatedly apologizing to Ms. McHale and admitting that he sexually assaulted her." *Id.* at 264-65. And the affidavit recounted Mr. Weidner's statements that he did not remember some of the alleged incidents.

The court concluded, "With no specific material omissions to include, or false contents to exclude, the Court reviews the Affidavit as is and, looking at the totality of the circumstances before Detective Ames, the Court finds no circumstances that militate against probable cause on these facts." *Id.* at 265-66. The court dismissed the federal and state malicious prosecution claims against Ms. McHale (Counts One, Four, and Seven) for the same reason.

b. *Intentional infliction of emotional distress ("IIED")*

The district court dismissed the IIED claim against Ms. McHale because the complaint "inadequately alleged whatever emotional distress [Mr. Weidner] has suffered for purposes of stating an IIED claim." *Id.* at 270. The court said Colorado law requires plaintiffs to show they suffered "severe emotional distress." *Id.* at 269 (quoting *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)). It also quoted Colorado's pattern civil jury instructions, which state, "Severe emotional distress" consists of "highly

10

unpleasant mental reactions" that are "so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it." *Id.* at 270 (quoting Colo. Pattern Civil Jury Instrs. 23:4). Relying on three federal district court decisions that dismissed IIED claims under similar circumstances, the court held the amended complaint's allegation that Mr. Weidner "suffer[ed] extreme emotional distress" was too conclusory to state a claim. *Id.* at 270-71.

c. *Remaining claims*

The district court dismissed the federal and state false arrest claims against both defendants (Counts Two and Eight) because the complaint did not allege Mr. Weidner was detained without legal process. It explained that detention based on legal process— here, a warrant—may give rise to a malicious prosecution claim, but not a false arrest claim. *Id.* at 257 (citing *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)). The court dismissed the federal conspiracy claim against both defendants (Count Three) because "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim" and "[n]o underlying claims . . . survive this [o]rder." *Id.* at 267. It dismissed the abuse of process claim against Ms. McHale (Count Five) because Mr. Weidner did not address or rebut her argument that the absence of probable cause defeated the claim. It also noted the amended complaint failed to allege Ms. McHale used legal process to achieve a "coercive goal," one of the elements of a state law abuse of process claim. *Id.* at 268 n.11.

11

d. *Leave to amend*

The district court denied leave to amend the claims against Detective Ames because Mr. Weidner's "opposition to the Ames Motion to Dismiss contains no reservation or request regarding potential amendment" and he did not separately file a motion to amend. *Id.* at 271. The court noted that in opposing Ms. McHale's motion to dismiss, Mr. Weidner stated several times he would seek leave to amend if the court disagreed with his arguments. Then it said, "If, after [Mr. Weidner] has an opportunity to review this Memorandum Opinion and Order, he continues to contend that amendment is proper with respect to his claims against Ms. McHale, he must meet and confer with Defendant McHale about any proposed amendments and may renew his request for leave to file an amended pleading through a formal motion no later than March 27, 2024." *Id.* at 272.

## 4. **Judgment and Appeal**

The district court dismissed all claims on March 13, 2024. Mr. Weidner did not seek leave to amend by the March 27 deadline. On April 11, he filed a notice of appeal of the March 13 dismissal. On May 16, the court entered final judgment dismissing all claims without prejudice.[4]

---

[4] Assuming Mr. Weidner filed his notice of appeal prematurely on April 11, we treat the notice as having been filed on the date of the entry of the May 16 final judgement. *See* Fed. R. App. P. 4(a)(2); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1111 (10th Cir. 2007). Thus, the notice of appeal was timely.

## II. **DISCUSSION**

On appeal, Mr. Weidner challenges the district court's conclusion that Detective Ames's affidavit provided probable cause for his arrest. Based solely on this alleged error, he seeks to revive his malicious prosecution, conspiracy, and abuse of process claims.[5] Mr. Weidner separately challenges the dismissal of his intentional infliction of emotional distress claim against Ms. McHale. Finally, he argues he should have been allowed to file a second amended complaint.

We review a district court's dismissal under Rule 12(b)(6) de novo. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We disregard allegations that "are no more than conclusions" and determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

We review a district court's failure to grant leave to amend for abuse of discretion. *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009).

---

[5] Mr. Weidner does not appear to challenge the dismissal of his false arrest claims. *See* Aplt. Br. at 11 (omitting false arrest claims from list of claims challenged on appeal). Mr. Weidner twice mentions false arrest in passing, *id.* at 14, 16, but he fails to address the district court's holding that his false arrest claims fail because he was arrested based on legal process. *See Myers*, 738 F.3d at 1194 ("Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims.").

Based on the following discussion, we affirm dismissal of (A) the malicious prosecution, conspiracy, and abuse of process claims because Detective Ames acted with probable cause, and (B) the intentional infliction of emotional distress claim as inadequately briefed.  We also (C) reject Mr. Weidner's contention that the district court erred in failing to grant him leave to amend the amended complaint.

## A. *Malicious Prosecution, Conspiracy, and Abuse of Process Claims*

Mr. Weidner argues the district court erred by considering the transcripts of the pretext calls.  Aplt. Br. at 19.  But on a motion to dismiss, a district court may "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Alvarado*, 493 F.3d at 1215 (quotations omitted).  The amended complaint referred to the calls, and they were central to allegations that Detective Ames omitted exonerating statements he made on the calls.  Mr. Weidner did not dispute the transcripts' authenticity.  The court therefore properly considered them to assess whether the affidavit mischaracterized the calls.

As for the probable cause affidavit, the amended complaint referred to it and it was central to the allegations.  Both defendants attached the affidavit to their memoranda submitted on the motion to dismiss.  The district court properly considered it to determine what information Detective Ames knew when she sought the warrant.

### 1. **Malicious Prosecution Claims Against Detective Ames**

To state a claim for malicious prosecution under § 1983, a plaintiff must show "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the

14

original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (quotations omitted).

On appeal, the parties dispute only the third element—the absence of probable cause.[6] Because the amended complaint fails to plausibly allege Detective Ames acted without probable cause, we affirm the district court.[7]

    a.  *Legal background*

Mr. Weidner "challenge[s] the probable cause determination supporting the warrant's issuance." *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008). We analyze his challenge under the *Franks v. Delaware* framework. 438 U.S. 154 (1978).

"Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). This standard does not set "a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Officers need "only the kind of fair probability on which reasonable and prudent [people,] not legal

---

[6] The district court found "the Parties have effectively conceded and agreed that [Mr. Weidner's] federal and state claims should be treated alike." App., Vol. I at 258 n.5. It therefore applied federal precedents to determine whether Detective Ames acted without probable cause. We do the same.

[7] In moving to dismiss the complaint, Detective Ames asserted qualified immunity. To overcome this defense, Mr. Weidner needed to plead (1) a constitutional violation (2) that was clearly established. *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024). Because we conclude Mr. Weidner failed to plead a constitutional violation, we do not address qualified immunity's clearly established law prong.

15

technicians, act." *Id.* (quotations omitted). "Formulation of probable cause does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quotations omitted).

An arrest warrant affiant violates the Fourth Amendment by (1) including false statements in the affidavit "knowingly and intentionally, or with reckless disregard for the truth," *Franks*, 438 U.S. at 155-56, or (2) knowingly or recklessly omitting information which, if included, would have vitiated probable cause, *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990) (citing and quoting *Franks*, 438 U.S. at 155-56, 171).

"[R]eckless disregard for the truth occurs whenever the affiant in fact entertains serious doubts as to the truth of his allegations." *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991). "Furthermore, reckless disregard for the truth can be inferred where the circumstances provide obvious reasons for doubting the truthfulness of the allegations." *Id.* "[T]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence *at most*." *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) (quotations omitted); *see Puller*, 781 F.3d at 1197-98.

When false statements have been knowingly or recklessly included in an arrest warrant affidavit, "the existence of probable cause is determined by setting aside the false

16

information and reviewing the remaining contents of the affidavit." *Wolford*, 78 F.3d at 489 (citing and quoting *Franks*, 438 U.S. at 155-56). When information has been knowingly or recklessly omitted from an affidavit, "the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Id.* (quotations omitted).

     b. *Analysis*

The statements in Detective Ames's affidavit supplied probable cause to believe Mr. Weidner was guilty of committing a crime. The affidavit provided a victim-witness's account of a sexual assault along with the alleged assailant's apology for "raping" the victim. App., Vol. I at 48-50. This evidence amply "supports a reasonable belief in guilt." *Hinkle*, 962 F.3d at 1220; *see also Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc) (noting our precedents may be read to hold that "ordinarily, the statement of a victim of a crime to police may establish probable cause absent some reason to think the statement not trustworthy").

Mr. Weidner does not dispute the affidavit established probable cause on its face. He instead argues that because Detective Ames failed to conduct a thorough investigation, the affidavit included false information and omitted exonerating information. We address whether Detective Ames knowingly or recklessly (i) included false allegations from Ms. McHale in the affidavit or (ii) omitted exculpatory information.

17

i. Knowing or reckless false allegations

1) Knowledge

The amended complaint failed to plausibly allege Detective Ames knew Ms. McHale's allegations of sexual assault recounted in the affidavit were false. Mr. Weidner contends Ms. McHale's cellphone contained exonerating information that proved her accusations were lies. But the amended complaint never alleged Detective Ames knew this information was on Ms. McHale's phone. It alleged instead that had Detective Ames examined Ms. McHale's phone, she "would have known" Ms. McHale's statements were false. App., Vol. I at 17; *see also id.* (alleging that Detective Ames "refused to extract the exonerating information" from the cellphone).

Mr. Weidner points to the amended complaint's allegation that Detective Ames "was in possession of information which completely exonerated Plaintiff." *Id.* He argues Detective Ames "had exonerating information in her possession" and "failed to look at it." Aplt. Br. at 17. But Detective Ames's possession of the cellphone does not show she knew about its allegedly exonerating contents.[8]

Mr. Weidner also points to the amended complaint's allegations that "criminal proceedings were instituted without probable cause, with knowledge that no probable cause existed, and with knowledge that the 'alleged' probable cause was based solely on

---

[8] Mr. Weidner cites *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), in which the court said, "Independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers" can defeat probable cause. *Id.* at 790. As noted above, the amended complaint failed to plausibly allege Detective Ames knew of any such evidence.

18

lies." App., Vol. I at 19. This conclusory statement is merely "a formulaic recitation of the elements of a cause of action" and does not "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-79.

### 2) Reckless disregard

The amended complaint failed to plausibly allege Detective Ames acted with reckless disregard for the truth. Detective Ames interviewed Ms. McHale twice, attempted to interview Mr. Weidner, and listened in on pretext calls between Mr. Weidner and Ms. McHale in which Mr. Weidner said he "never should have assaulted" Ms. McHale and was "so sorry for raping" her. App., Vol. I at 50. Armed with accounts of wrongdoing and multiple inculpatory admissions from Mr. Weidner, Detective Ames had no "obvious reasons for doubting the truthfulness of [Ms. McHale's] allegations." *Salmon*, 948 F.2d at 1140.

Mr. Weidner's recklessness theory that Detective Ames "fail[ed] to investigate a matter fully," *Beard*, 24 F.3d at 116, does not hold water. Failure to investigate "rarely suggests a knowing or reckless disregard for the truth." *Id.* In light of the incriminating information her investigation had uncovered, Detective Ames's not further investigating the contents of Ms. McHale's cellphone was "negligence *at most*." *Id.* (quotations omitted).

Mr. Weidner relies on *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999). It held an officer violated the Fourth Amendment when he "ignore[d] exculpatory evidence within his knowledge" and failed to "conduct a reasonable investigation" before making a warrantless arrest. *Id.* at 651. But unlike the officer in *Kuehl*, Detective Ames did not

19

ignore exculpatory evidence within her knowledge. Even more telling, *Kuehl* did not concern whether an officer acted with reckless disregard for the truth in seeking an arrest warrant. It addressed the minimum investigation required for a warrantless arrest.[9]

        ii.   <u>Knowing or reckless omissions</u>

Detective Ames did not knowingly or recklessly omit exculpatory information from the affidavit because she was not aware of any such information when she prepared the affidavit.

The amended complaint alleged the affidavit omitted exculpatory text messages on Ms. McHale's phone and also that Ms. McHale withheld this evidence. But as previously explained, Detective Ames did not know this evidence existed, nor did she recklessly fail to uncover it. *See Stewart*, 915 F.2d at 583 (holding failure to disclose certain information "would be a reckless omission" if the officer "had in fact" learned that information "before the warrant . . . was obtained"). Similarly, the amended complaint also alleged Detective Ames omitted that Ms. McHale had made previous false accusations to police that others had sexually assaulted her, but it did not allege Detective Ames knew this fact.

---

[9] We have said that officers must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995). But even for a warrantless arrest, *Romero* held "a police officer who interviews witnesses and concludes probable cause exists" need not interview the defendant's alleged alibi witnesses absent a showing that the "initial probable cause determination was itself unreasonable." *Id.* at 1476-78.

The amended complaint next alleged Detective Ames omitted that Ms. McHale cancelled numerous follow-up interviews with police after her first interview. Apart from Mr. Weidner's failure to explain how this matters to probable cause, the affidavit said Ms. McHale cut the first interview short and "was unable to mentally come in for a second interview until 11/6/20." App., Vol. I at 48. Leaving the cancelled interviews out of the affidavit was a benign omission, "at worst, negligent." *Puller*, 781 F.3d at 1197.

Finally, the amended complaint alleged Detective Ames omitted the "full context" of the pretext call and instead "used seconds of an hours long call, which in totality was exculpatory and which negated the existence of probable cause." App., Vol. I at 18. This mischaracterizes the affidavit, which contains far more than "seconds" of the call. In addition to Mr. Weidner's multiple inculpatory statements, the affidavit reported that Mr. Weidner said he did not remember Ms. McHale crying or saying no on the night of the Jefferson County incident, did not remember pushing her face into a pillow, never did anything with malicious intent, and was not saying he purposefully ignored signs of non-consent. In addition, the amended complaint failed to identify omitted exculpatory information. The conclusory allegation that the "full context" of the call "negated the existence of probable cause," *id.*, was insufficient to state a claim.[10]

---

[10] Mr. Weidner argues the "tone, context, sarcasm, and other material elements of the [pretext] call cannot be concerned [sic] from a dead transcript." Aplt. Br. at 19. But the amended complaint contained no allegations Mr. Weidner was sarcastic on the calls, nor does it identify what "context" "negated the existence of probable cause." App., Vol. I at 18.

2.  **Malicious Prosecution Claims against Ms. McHale**

Mr. Weidner's opening brief argues only that probable cause did not exist to prosecute him based on Detective Ames's investigation. Aplt. Br. at 16-20. Because probable cause supported Mr. Weidner's arrest, this argument does not provide a basis for reversing the dismissal of the malicious prosecution claims against Ms. McHale.

In his reply brief, Mr. Weidner argues "to the extent that the lower court determined Appellee [Ames] had probable cause," the same "cannot be said for Ms. McHale" because the amended complaint alleged Ms. McHale lied about being sexually assaulted. Aplt. Reply Br. at 3-4. We decline to consider this argument because it is raised for the first time in Mr. Weidner's reply brief. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *see also* Fed. R. App. P. 28(a)(8)(A) (an opening brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

We affirm the dismissal of the malicious prosecution claims against Ms. McHale.

3.  **Conspiracy and Abuse of Process Claims**

The district court dismissed the federal conspiracy claim against both defendants because Mr. Weidner had failed to plead any constitutional violation. It dismissed the state law abuse of process claim against Ms. McHale because Mr. Weidner was prosecuted with probable cause and because Ms. McHale did not use legal process for abusive ends.

Mr. Weidner's opening brief argues only that Detective Ames lacked probable cause to prosecute Mr. Weidner. Aplt. Br. at 11-19. Because the only argument Mr. Weidner raises on appeal is meritless, and because he does not otherwise challenge the dismissal of these claims, we affirm the dismissals.

## B. *Intentional Infliction of Emotional Distress*

### 1. **Legal Background**

Colorado law recognizes "an action in tort . . . to recover damages for severe emotional distress without any accompanying physical injury, subject to the limitations as set forth in Restatement (Second) of Torts s 46 (1965)." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970). The elements of this tort are that the defendant (1) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) caused the plaintiff to incur severe emotional distress. *Culpepper v. Pear Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).

Under the third element, the plaintiff "must prove the existence of severe emotional distress or harm." *Espinosa v. Sheridan United Tire*, 655 P.2d 424, 425 (Colo. App. 1982). Severe emotional distress consists of "highly unpleasant mental reactions" that are "so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (Am. L. Inst. 1965); *see Espinosa*, 655 P.2d at 425 (relying on "the limitations set forth in comment j" of the Second Restatement).

"The intensity and the duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46 cmt. j.[11]

2. **Analysis**

The amended complaint alleged Mr. Weidner "suffered emotional pain and suffering" and "suffer[ed] extreme emotional distress." App., Vol. I at 19, 23. The district court found these allegations too conclusory to state a claim. It relied on the Colorado pattern jury instructions and three federal district court decisions dismissing similarly-pled claims.

On appeal, Mr. Weidner challenges the district court's ruling in a single paragraph that contains no citations to the record or to case law. He does not address the pattern jury instructions or the authority on which the district court relied. He thus has not met his "burden of demonstrating the alleged error." *United States v. Iverson*, 818 F.3d 1015, 1022 (10th Cir. 2016). "Cursory statements, without supporting analysis and case law, are inadequate to preserve an issue." *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) (quotations omitted). We will not "manufacture [Mr. Weidner's]

---

[11] *See also* Colo. Pattern Civil Jury Instrs. 23:4:
Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it. The duration and intensity of emotional distress are factors to be considered in determining its severity.

argument[s] on appeal" when he "has failed in [his] burden to draw our attention to the error below." *Iverson*, 818 F.3d at 1022.[12]

Even considering Mr. Weidner's cursory argument, we discern no error in the district court's conclusion that the amended complaint's conclusory allegations of emotional distress fail to state a claim. "[A] formulaic recitation of the elements of a cause of action" is insufficient. *Iqbal*, 556 U.S. at 678 (quotations omitted). The amended complaint said nothing about the "intensity and duration" of any emotional symptoms Mr. Weidner suffered. *See* Restatement (Second) of Torts § 46 cmt. j. It therefore failed to plausibly allege that Mr. Weidner can "prove the existence of severe emotional distress or harm." *Espinosa*, 655 P.2d at 425.

## C. *Leave to Amend*

Mr. Weidner argues the district court erred by not granting leave to file a second amended complaint. Aplt. Br. at 19-20. "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013);

---

[12] Further, Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure "requires the argument section [of an appellant's brief] to contain 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *MacArthur v. San Juan County*, 495 F.3d 1157, 1160 (10th Cir. 2007) (quoting Rule 28(a)(9)(A), as the rule was styled before the 2013 amendments reorganized the paragraphs). "Under Rule 28, . . . a brief must contain . . . more than a generalized assertion of error, with citations to supporting authority." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (quotations omitted).

When "[t]he argument section of [the] opening brief does not challenge the [district] court's reasoning on [a] point[, w]e . . . do not address the matter." *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011).

*see Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010). Mr. Weidner never requested leave to amend his allegations against Detective Ames. Although he expressed interest in amending some of his claims against Ms. McHale if his opposition to the motion to dismiss failed, he never filed a motion for leave to amend despite the district court's express invitation to do so. The district court did not abuse its discretion.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge